FITTERLING v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

1. **Justice's Courts**: JURISDICTION: RAILROADS. A justice of the peace of a township adjoining one in which live stock is killed on a railroad, has jurisdiction of an action against the company to recover damages for the injury.

2. ——: DEFECTIVE SERVICE OF SUMMONS. By appearing before a justice of the peace and filing a general motion to set aside a judgment by default, a defendant waives any defect in the service of summons.

   By appealing to the circuit court he dispenses with the necessity of a regular summons.

   By introducing evidence at the trial in the circuit court, he submits himself to the jurisdiction of that court.

3. **Railroads**: DAMAGE TO LIVE STOCK. There can be no recovery against a railroad company for live stock coming upon the track through a defective gate, and killed there, without proof that the company knew of the defect.

4. ——: FARM CROSSINGS. The statute does not require the construction of either cattle-guards or cross-fences at farm crossings. R. S., ? 809.

*Appeal from Johnson Circuit Court.*—HON. NOAH M. GIVAN, Judge.

REVERSED.

*T. J. Portis* and *E. J. Sherlock* for appellant.

*W. W. Wood* for respondent.

SHERWOOD, J.—Action for damages for killing mules in Centerview township, brought before a justice of the peace of Warrensburg township, which adjoins the township where the injury happened.

## I.

We have no doubt that the justice had jurisdiction of the subject matter of the action. Section 2835, Revised Statutes 1879, so far as pertinent to the present inquiry, is

as follows: "Except as otherwise provided by law, justices of the peace shall have original jurisdiction of * * all actions against any railroad company in this State to recover damages for the killing or injuring of horses, mules, cattle or other animals within their respective townships, without regard to the value of such animals or the amount claimed for killing or injury to the same." But jurisdiction of justices of the peace is " otherwise provided by law;" for section 2839, Revised Statutes 1879, after specifying where suits before justices of the peace shall be brought, contains a new clause, the fifth, wherein it provides that " any action against a railroad company for killing or injuring horses, mules, cattle or other animals, shall be brought before a justice of the peace of the township in which the injury happened, or any adjoining township."

## II.

The justice having jurisdiction over the subject matter of the action, whether the service of the summons on the defendant was sufficient or not, is immaterial. The defendant appeared before the justice and filed a general motion to set aside the judgment by default. Had the justice set aside the default it is clear no further service on the defendant would have been necessary; and all defects in the former service would have been waived.

Besides, on reaching the circuit court, to which the defendant appealed, by express provision of the statute, the cause was to be tried *de novo*, " without regarding any error, defect or other imperfection in the original summons or the service thereof." R. S. 1879, § 3052. Defendant, by bringing up the cause by appeal, dispensed with the necessity of a regular summons before the justice. *Gant v. Railroad Co., ante*, p. 502, and cases cited.

Moreover, after defendant's special motion in the circuit court to dismiss the suit was denied, it appeared to the action, and introduced evidence in its defense. Jurisdiction over the defendant was, therefore, thereby acquired even

had it not been acquired before. *Reddick v. Newburn,* 76 Mo. 423.

### III.

The evidence adduced by plaintiff was the following:

Plaintiff testified: The Missouri Pacific Railroad runs through our farm in Centerview and Warrensburg townships, Johnson county, Mo. I live in Warrensburg township. My mules were killed on the 17th day of December, 1879. On the 19th day of December, 1879, my attention was called to the fact that the gate was out of repair. I did not know this before. The gate is only a few rods from my house. I pass through it nearly every day, and sometimes several times in a day; passed through the day the mules were killed and the day after; did not notice anything wrong with the gate. My lot is on the south side of the railroad. We have a farm crossing there, but no cross-fences at the crossing. The hook was large and strong, and the staple was driven in the post. They were put in so that if the gate was pressed hard against the post the hook wonld come out of the staple. There were no cattle-guards at the crossing; no cross-fences there either. The fields are on both sides of the railroad. On the evening of December 17th, 1879, I came home and chained my mules together by the neck as usual to keep them from jumping and turned them into my lot and closed the gate. The next morning the mules wore out of the lot. I found them both dead.on the right of way about 200 yards west of the gate, in Centerview township, both killed by defendant's train, lying close together. The mules were about fourteen hands high and at least ten years old. Mr. Lewis and I went to bed about half past nine, and about ten o'clock I heard the engine whistle once. I think the mules were killed then. They did not ring the bell. The mules were stiff and cold next morning. I had been to town the day the mules were killed, along with J. W. Patterson and Mr. Lewis. We came home about dark that evening. I

ran ahead of the wagon and came through the gate and closed it with my own hands; had the hook in my hands; did not detect anything wrong with hook or staple. Mr. Patterson came through the gate after me with the wagon and closed the gate. I saw him close it. This was just about dark the same evening the mules were killed. The gate is made of inch boards, and is a very strong gate. The hinges are as strong as if made from iron from a wagon tire. They are two feet long. The gate is at least five and a half feet high. The posts are large railroad ties. The hook and staple are of three-eighths inch rod-iron and very strong. I live in Warrensburg township. The mules were killed across the line in Centerview township. Defendant has a freight and ticket office and station at Centerview, a town in Centerview township where the mules were killed; also an agent at Centerview station; also a depot, ticket office and an agent at Warrensburg. Warrensburg township adjoins Centerview township on the east. I saw the tracks of the mules where they went out of the lot through the gate and up the railroad track where I found them dead.

J. W. Patterson testified: I was at Fitterling's when his mules were killed by Missouri Pacific Railway 200 yards west of Fitterling's private crossing; came home with him the evening they were killed; saw the railroad fence gang working at the gate one or two days before they were killed. They put the staple up two or three inches above the hook, and a push against the gate would cause the hook to come out of the staple. I have opened the gate that way, and some pressure must have opened the gate; have opened the gate by pressing against it without taking hold of the hook. There were no cattle-guards to keep the mules off the track.

John Branham testified: I am step-father of plaintiff. We all live in one house. Am well acquainted with the gate spoken of; hauled the gate from another part of the farm to put it up at the lot crossing in place of one that

was broken; hung it myself, and hung it upside down. The railroad men came along and laughed at my hanging. The hook and staple were both large and strong. The staple was driven in the post and the hook was driven in the gate. The gate was furnished by the railroad company. I am satisfied the railroad men did not change the hook. They may have changed the staple. I have seen the wind blow the gate open since the mules were killed. A push against the gate pressing it to the post would throw the hook out of the staple.

Richard Lewis testified: After the mules were killed they were laying close together at the side of the track. When I saw them dead they had the appearance of being killed by the train. The chain on the mules' necks was broken. Mules were worth $150.

Charles Burkhardt and James Barcolo testified to the fact that if the gate was pressed against the post the hook would come out, and Barcolo testified that two days before the mules were killed he called plaintiff's step-father's attention to that fact (that is Branham who resided in same house with plaintiff).

Plaintiff rested here, and defendant tendered a demurrer to the evidence.

We think the demurrer to the evidence should have been allowed. We are able to discover nothing in the evidence which discloses any knowledge or notice on the part of the defendant of any defect in the fastening of the gate. Plaintiff, himself, who passed and re-passed through the gate several times a day, testifies that he knew nothing of the insufficiency of the fastening till two days after the mules were killed. Surely, if he, with all his daily opportunities to do so, did not discover any such defect, it is difficult to see how the defendant or any of its agents with their limited and casual opportunities, could have become aware of it, or be justly chargeable with negligence for failure to do so. *Clardy v. Railroad Co.*, 73 Mo. 576; *Case*

*v. Railroad Co.*, 75 Mo. 668; *Morris v. Railroad Co., ante,* p. 367.

In a recent case in Iowa, quite similar to the present one, where the colts were killed by a train, evidence that the gate was easily opened, and could be opened by the animals putting their heads through an opening in the gate, was held insufficient to sustain a verdict for damages. The lower court had directed a verdict for the defendant, and Rothrock, J., remarks: "Verdicts must have evidence to support them, and must not be founded upon mere theory and supposition." *Bothwell v. Railroad Co.*, 59 Iowa 192; *s. c.*, 7 Am. and Eng. R. R. Cases 570.

## IV

And the place where the gate was hung being a "farm crossing," neither cattle-guards nor cross-fences were necessary, since the law does not require their construction at such points. R. S. 1879, § 809. Evidence that no such cattle guards or cross-fences were built, did not strengthen plaintiff's case, and was erroneously admitted.

As, in our opinion, there was no evidence on which to base a recovery, the judgment will be reversed and the cause remanded. All concur.