Marion West, Guardian, etc., Respondent, v. The Missouri Pacific Railway Company, Appellant.

Kansas City Court of Appeals, May 23, 1887.

Railroads, Duty of, Under Section 809, Revised Statutes, as to Erecting and Maintaining Fences.—The meaning of the statutory requirement in section 809, Revised Statutes, that railroad companies shall erect and maintain fences with gates and bars, etc., is, that the railroad companies shall maintain the *gates closed*. These gates are a part of the fence, and the duty to keep their fences in repair includes the duty to keep them safe and securely closed, so as to afford equal protection from stock getting upon their roads from such places, as at other points. For a railroad company to permit such a gate to remain open, when it knows, or, by ordinary care, might know, that the gate is open, is negligence, under the statute, and is a failure to erect and maintain the gate under the statute.

Appeal from Jackson Circuit Court, Hon. Francis M. Black, Judge.

*Affirmed.*

Statement of case by the court.

This was an action under section 809, Revised Statutes, for the recovery of double damages, on account of

the killing of a mule by defendant. The case was tried on the following agreed statement of facts and evidence : "That the plaintiff in the above cause is the guardian of J. C. West, and that, as such, he has the right to maintain . the above action; that the mule, on account of which the above suit was brought, was the property of J. C. West; that it was killed by the defendant's railroad, on the thirteenth day of December, 1883, at a place where defendant's road runs through the cultivated field of one J. P. Knoche; that the mule was worth one hundred and twenty-five dollars; that the mule passed from plaintiff's field, where it had been turned by plaintiff to graze, into the field of John P. Knoche through a partition fence that belonged to Knoche that was down, and had been, for a long time; that the mule, before it reached Knoche's land, passed across the Chicago & Alton Railroad at a private farm crossing of West's, where said Chicago & Alton road passed through West's field; that said crossing was protected with cattle guards, and was used by West in passing through their field; that, between that part of the field of Knoche's, into which the mule first passed, and the track or road bed of defendant, there was a second fence of Knoche's; that in this second fence of Knoche's there was a gap, or place where the fence was down or open, and through which gap or open place, plaintiff's mule passed into that part of Knoche's field that defendant's road run through; that this last mentioned fence had been down or open for about six weeks prior to the time the mule passed through it; that the mule then passed through an open gate in the defendant's fence at a private farm crossing of Knoche's in Knoche's field, and in and upon the defendant's road bed, where it was killed by one of the defendant's passing trains; that the gate was hung with hinges and hooks, and was easily opened and shut, and is the same gate spoken of in the evidence of John Knoche, John Knoche, Jr., and George Burris."

John Knoche, John Knoche, Jr., and George Burris

testified that they lived near Blue river, a few miles east of Kansas City ; that they are acquainted with the track and road bed of the Missouri Pacific Company, where it runs through the field of John P. Knoche, and that they are acquainted with the gate that composed a part of said railroad company's fence, where it runs through said field. John Knoche and John Knoche, Jr., testified further, that said gate had been open and unclosed from the early part of the fall of 1883, about the month of September of that year, until the thirteenth day of December of said year, that being the day that a horse and mule belonging to some parties by the name of West were killed by the railroad.

This gate was at a private crossing of Knoche, and was used as such, and had been open ever since he threshed wheat in September.

George Burris testified that he passed the gate once or twice a week during the time stated by the other witnesses, and at such times the gate was open, and that he never saw it shut.

The court found for the plaintiff, and the defendant has appealed to this court.

ADAMS & BOWLES, for the appellant.

The undisputed evidence in this case is, that the gate, through which the mule of plaintiff escaped and entered upon defendant's track, was constructed for the benefit of Mr. Knoche, at his farm crossing. That the statute in that regard was strictly complied with, and that it was not opened, or left open, by the defendant or any of its employes. We contend that the court erred in rendering judgment for double damages against the defendant, and that, upon the agreed statement of facts and all the evidence, the *finding should have been for the defendant. Harrington v. Railroad,* 71 Mo. 386 ; *Fitterling v. Railroad,* 79 Mo. 504 ; *Laney v. Railroad,* 83 Mo. 469.

W. J. WARD, for the respondent.

I.   Knoche's land not being enclosed with a lawful fence, the plaintiff's mule was not a trespasser thereon. *Gorman v. Railroad*, 26 Mo. 441.

II.   Railroads must have their roads enclosed by a lawful fence, or the man whose lands and fields their road runs through must have his property enclosed by one, if they would be free from liability for killing the stock of third parties.   Third parties have a right to demand that there shall be a *legal fence between their fields, their commons, or the public commons and all railroad tracks*, outside of towns and cities, in this state.   *Berry v. Railroad*, 65 Mo. 172 ; *Railroad v. Arnold*, 47 Ill. 173 ; *Johnson v. Railroad*, 80 Mo. 620 ; *Peddicord v. Railroad*, 85 Mo. 160.

III.   Under the statutes of this state, railroads must *fence* their *entire track*.   Rev. Stat., sect. 809.

IV.   The fences and gate through which plaintiff's mule passed were open so long that their being so constituted *negligence*.   *Railroad v. Cohen*, 44 Ind. 444 ; *Railroad v. Harris*, 54 Ill. 528.

V.   Plaintiff's instruction was properly given. See cases in paragraph II.

HALL, J.—The question is, did the facts in evidence, and set out in the agreed statement of facts justify the finding of the court in favor of plaintiff ?

The facts, in brief, are, that the mule went from the plaintiff's field into Knoche's field through Knoche's fence, which was down, and had been down for a long time, and that the mule went from Knoche's field onto the defendant's right of way, through a gate in defendant's railroad fence at Knoche's private crossing, which gate was then open, and had been open, from September to December 13, 1883, and that the mule got upon the defendant's railroad track, was run over and killed.

The plaintiff's mule was not a trespasser on Knoche's field.   That field was not enclosed with a lawful fence, and

the mule, therefore, having entered the field through the defective fence, was within the protection of the statute. *Berry v. Railroad*, 65 Mo. 172; *Peddicord v. Railroad*, 85 Mo. 160. The defendant was not shown to have left the gate open, and, generally speaking, the defendant was not liable on account of the gate being left open by third parties. *Binicker v. Railroad*, 83 Mo. 662. While this is true, generally speaking, it is clear that the meaning of the statutory requirement that railroad companies shall erect and maintain fences with gates and bars, etc., is, that the railroad companies shall maintain the gates closed. "The law requires these companies to fence the track of their roads with sufficient fences to turn stock, and, after erecting them, to keep them in repair. The statute also requires to put in gates at farm crossings. These gates are a part of the fence, and the duty to keep their fences in repair includes the duty to keep them safe and securely closed, so as to afford equal protection from stock getting upon their roads at such places as at other points." *Railroad v. Harris*, 54 Ill. 530; *Railroad v. Arnold*, 47 Ill. 173. If third persons opened the gate, the defendant would not have been liable on account of the gate being open, unless it had notice of the fact that the gate was open, or could have known that the gate was open by the use of ordinary care and diligence. For a railroad company to permit a gate, such as the gate in suit, to remain open when it knows, or might, by ordinary care, know, that the gate is open, is negligence under the statute, and is a failure to erect and maintain the gate in the meaning of the statute. " While the company were not required to keep such a guard on their road as would see a breach at the instant it occurred, and repair it at the time, still the law requires them to keep such a force as may discover such breaches and openings in their fences, and to close them in a reasonable time. And to neglect doing so, for a week or more, is a neglect of duty that will ordinarily render it liable for the injury ensuing therefrom."

*Railroad v. Harris,* 54 Ill. 530. The gate in suit remained open from September to December 13, and the defendant must be presumed to have known that it was open, and must be held liable for all injuries caused by permitting it to remain open.

In our opinion, the judgment of the circuit court was proper and should be affirmed. It is so ordered. All concur.