OSCAR MORRISON, Respondent, v. KANSAS CITY, ST. JOSEPH & COUNCIL BLUFFS RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, October 24, 1887.

1. RAILROADS—OBLIGATION TO FENCE—DUTY TO MAINTAIN GATES—CONSTRUCTION OF STATUTE.—The requirement of the statute (section 809, Revised Statutes), that every railroad company shall erect and maintain fences * * with openings and gates therein, etc., and providing that until fences, gates, etc., shall be made and maintained, that it shall be liable in double damages for all damages that shall be done * * by the failure to construct or maintain such fences, etc., makes the obligation to maintain the gate the same as to erect it in the first instance. The whole section must be taken into consideration, and throughout the duty to build and maintain the gate is expressly imposed upon the company, and the gate is part of the fence itself.

2. —— —— LIABILITY AFTER ERECTING THE GATE—ONLY ON REASONABLE NOTICE.—But after the railroad company has erected the gate required by statute, it is not expected to stand perpetual guard over it to keep it closed against the act of third parties in leaving it open; and if stock escape thus, before the servants of the company have notice of the fact of the gate being open, or reasonable time in which to discover the fact, no liability attaches. But the gate must "be hung and have latches or hooks, so that it may be easily opened and shut," pursuant to the statute, in order to be entitled to such exemption from liability.

3. ——— ——— CONSEQUENTIAL DAMAGES—NEGLECT OCCASIONING THE INJURY.—The innocent or culpable act of a third person may be the immediate cause of the injury, and still an earlier wrongful act may have contributed so effectually to it as to be regarded as the efficient act, or at least concurrent and responsible cause. And while it is true, generally, that where the wrongful act of one party affords only the occasion for the wrongful act of another, it is too remote as to the first wrong-doer; yet this rule is always subject to the qualification, unless the injury thus ensuing was such as was likely, according to the general experience, to happen from such conduct, or where the misconduct offering such opportunity consists in the omission of some precaution it was the defendant's duty to take against such loss as has occurred. Sutherland on Damages, 64, 70.

APPEAL from Jackson Circuit Court, HON. TURNER A. GILL, Judge.

*Affirmed.*

The case and facts are stated in the opinion of the court.

STRONG & MOSMAN, for the appellant.

I.   The court erred in striking the plea of contributory negligence out of the answer.   The defendant's liability was for "double the amount of all damages occasioned by its failure;" not for double the amount of all damages occasioned by combined negligence of plaintiff and defendant.   Section 809, Revised Statutes; *Curry v. Railroad*, 43 Wis. 665; *Field v. Railroad*, 8 Am. & Eng. Ry. Cases, 425; s. c. 14 Fed. Rep. 332; *Milburn v. Railroad*, 86 Mo. 104; *Pilzner v. Schenmek*, 39 Wis. 129; *Jackson v. Railroad*, 25 Vermont, 150; *Munger v. Railroad*, 4 N. Y. 349; *McCandless v. Railroad*, 45 Wis. 365; *Lawrence v. Railroad*, 42 Wis. 322; *Hance v. Railroad*, 26 N. Y. 428; *Railroad v. Irish*, 72 Ill. 405; *Railroad v. Adams*, 43 Ind. 402; *Railroad v. Candle*, 60 Ind. 112; *Railroad v. Huber*, 42 Ind. 173; *Railroad v. Wendt*, 12 Nebraska, 80; *Railroad v. Landes*, 24 Kan. 406; *Railroad v. Mc-*

*Henry*, 24 Kan. 501; *Jones v. Railroad*, 42 Wis. 306; *Whittier v. Railroad*, 24 Minn. 394.

II. Defendant's objection to any evidence being given under the petition should have been sustained. Under the statute it was not the duty of the defendant to maintain the gate. *Scott v. Reed*, 10 Pet. 524; *Brewer v. Blougher*, 14 Pet. 178; *Murray v. Railroad*, 43 N. Y. 274; Story's Conflict of Laws, 17; *Rex v. Inhabitants of Bently*, 10 B. & C. 527. Words cannot be imported into a statute. *King v. Burrell*, 12 Ad. & E. 468; *Everell v. Mills*, 4 Scott (N. C.) 531; *Lamond v. Effice*, 3 Q. B. 910; *Jackson v. Lewis*, 17 Johns. 475; *People v. Railroad*, 13 N. Y. 78. Penal statutes are never extended by implication. *Andrews v. United States*, 2 Story, 203; *Stinson v. Pond*, 2 Curt. 502; *Parish v. Railroad*, 64 Mo. 284; *United States v. Ten Sharols*, 2 Paines [C. C.] 166. Statutes in derogation of the rights of property must be strictly construed. *Van Horne v. Dormance*, 3 Vali, 316. So, too, when in derogation of the common law. *Brown v. Barry*, 3 Dall. 367; *Dwelly v. Dwelly*, 46 Me. 377; *Burnside v. Whitney*, 21 N. Y. 148.

III. Because the statute did not make defendant liable in double the amount of all damages done to stock which came upon the road through gates which are open in consequence of defendant's failure to maintain them an injury to such stock cannot be said to be occasioned by the failure to maintain such fences and cattle-guard. See sect. 809, Rev. Stat., 1879; *Paler v. Railroad*, 16 N. Y. 476; *Murray v. Railroad*, 43 N. Y. [4 Keys] 274; *Barnett v. Railroad*, 60 Mo. 56; *Curry v. Railroad*, 43 Wis. 665; *Parrish v. Railroad*, 63 Mo. 284.

IV. Defendant's demurrer to the case made by plaintiff's evidence should have been sustained. (1) Because the statute did not impose on the defendant the duty of keeping the gate closed. (2) Because the statute does not authorize an action to recover double the amount of the damage done to stock which come upon

the track through gates carelessly left open by the defendant. It was as much the duty of plaintiff as of defendant to see that the gates were closed. *Railroad v. McKee*, 43 Ill. 119; *Railroad v. Dickerson*, 27 Ill. 55; *Paler v. Railroad*, 16 N. Y. 476; *Railroad v. Huber*, 42 Ind. 173; *Enright v. Railroad*, 33 Cal. 230; *Railroad v. Williamson*, 2 West. Rep. 223; *Ind. & Cum. R. R. Co.*, 23 Ind. 340; *Railroad v. Shriner*, 17 Ind. 265; *Eames v. Boston*, 14 Allen [Mass.] 151. (3) Said demurrer should have been sustained because there was no evidence that the killing was done by defendant's engines or cars. An actual collision with defendant's engine was necessary to sustain such action. *Seibert v. Railroad*, 72 Mo. 565; *Railroad v. Packwood*, 7 Am. & Eng. Ry. Cases, 584; *Railroad v. McMillen*, 37 Ohio St. 554; *Young v. Wilson*, 24 Miss. 694; *Railroad v. Talbott*, 78 Ky. 621. Verdict must be founded on something more than mere theory and supposition. *Fitterling v. Railroad*, 79 Mo. 504; *Callahan v. Warne*, 40 Mo. 131; *Wood v. Railroad*, 51 Wis. 201. No inference of factor law is reliably drawn from premises so uncertain. *United States v. Ross*, 92 U. S. 283; *McAleer v. Murray*, 58 Pa. 126; *United States v. Corcoran*, 2 Peters [U. S.] 132; *Laurance v. Railroad*, 42 Wis. 329; *Cordell v. Railroad*, 75 N. Y. 330; *Branagan v. Railroad*, 75 Ind. 490; *Smith v. Railroad*, 37 Mo. 287. (4) Because there was no evidence to show that the defect in the gate had any agency in causing the gate to be open on this occasion. *Laney v. Railroad*, 83 Mo. 466; *Fitterling v. Railroad*, 79 Mo. 504; *Bothwell v. Railroad*, 59 Iowa, 192; *Johnson v. Railroad*, 55 Iowa, 707; *Clardy v. Railroad*, 73 Mo. 576; *Harrington v. Railroad*, 71 Mo. 384. And the evidence did show that the gate was left open by strangers. *Ridenour v. Railroad*, 81 Mo. 227; *Harrington v. Railroad*, 71 Mo. 384; *Case v. Railroad*, 75 Mo. 668. (5) Because there was no evidence tending to show that defendant could have ascertained the fact that the gate was open, and had

time to close it before the horses went through. *Ridenour case, supra; Laney case, supra; Harrington case, supra; Railroad v. McGee*, 60 Ill. 530; *Railroad v. Swearingen*, 47 Ill. 206; *Aylesworth v. Railroad*, 30 Ia. 459; *Perry v. Railroad*, 36 Ia. 102; *Eames v. Railroad*, 14 Allen, 153.

V. Plaintiff's first instruction should not have been given, because: (1) It was so vague, general, and indefinite, that instead of being a guide to the jury in their deliberations it confused them, and beclouded the real questions of fact in the case. (2) It was an incomplete statement of facts which, for the most part, were wholly irrelevant. (3) It predicated a recovery on the co-existence of two separate, distinct, and independent facts, regardless of whether they, or either of them, had any agency in producing the injury. (4) There was no evidence tending to show that the injury was due to the combination of these two causes. (5) Said instruction was erroneous in that it did not require the jury to find that the gate, on this occasion, was caused to be open by reason of its "being out of repair." (6) It was erroneous in that it did not require the jury to find that the gate was open through the defendant's neglect on that occasion, or that defendant was guilty of negligence in respect to keeping it in repair.

VI. (1) It was error to refuse defendant's second and sixth instructions. *Harrington v. Railroad*, 71 Mo. 384; *Binicker v. Railroad*, 83 Mo. 660. (2) It was error to refuse defendant's third instruction. *Railroad v. McKee*, 43 Ill. 119; *Railroad v. Dickerson*, 27 Ill. 55; *Paled v. Railroad*, 16 N. Y. 476; *Railroad v. Huber*, 42 Ind. 173; *Enright v. Railroad*, 33 Cal. 230; *Wabash v. Railroad*, 2 West. Rep. 23; *Railroad v. Schriener*, 17 Ind. 265; *Eames v. Railroad*, 14 Allen, 151. (3) It was error to refuse defendant's fourth instruction. Strangers had no right to pass through plaintiff's premises in order to cross the railroad, and if plaintiff permitted them to do so he became responsible

for their carelessness.  At any rate he could not recover if his licensee carelessly left the gate open.  (4) Defendant's fifth, sixth and seventh instructions were the law, and should have been given.  *Enright v. Railroad*, 33 Cal. 230 ; *Railroad v. Seerer*, 60 Ill. 295 ; *Roler v. Railroad*, 16 N. Y. 476 ; *Case v. Railroad*, 75 Mo. 668 ; *Ridenour v. Railroad*, 81 Mo. 227 ; *Binicker v. Railroad*, 83 Mo. 660 ; *Laney v. Railroad*, 83 Mo. 446 ; *Fitterling v. Railroad*, 79 Mo. 504.

VII.  For the reasons aforesaid, it was error to overrule defendant's motion for a new trial.

VIII.  The court erred in doubling the damages found by the jury.  The horse went in through a gate left open by strangers.  Even had defendant been guilty of knowingly failing to close the gate, the plaintiff could not recover double damages for an injury occasioned thereby.  See cases cited in support of defendant's objection to any evidence under the petition.

IX.  The court erred in overruling the defendant's motion in arrest of judgment, for the reasons given in support of our objection to any evidence under the petition, and those given in support of the demurrer to the evidence.  See cases cited in support of those points in paragraph I.

C. W. FREEMAN, for the respondent.

I.  Plaintiff claims, and sets up in his petition, "that on November 7, 1883, and for several months prior to that date, a gate in said fence (being the gate through which said horse went upon defendant's roadbed), was, and had been negligently and carelessly left out of repair and open by the defendant ; that, on account of said gate being negligently left open and out of repair, said horse of plaintiff went upon the roadbed of defendant, and was run against and killed, as above set out."

II.  The evidence in this case shows that the gate in question had been out of repair for three months prior

to the happening of the matter complained of; that the post to which the gate had been hung had rotted entirely off, and depended upon the fence wire attached to it for support; that there were no fastenings to the gate of any kind; that the gate had to be lifted and dragged in order to open and shut it; that this condition of the gate was or could have been known to the section foreman, Casey, by the use of reasonable diligence, for a long time prior to the accident, as he passed same several times every day, and that he made no attempt to repair it; that on account of this condition of the gate the plaintiff had for some time been tieing up his horses in his stable, but that on the night of the accident they got loose and went upon the track of defendant, through this gate, and one of them was killed. The evidence also shows that between four and five o'clock in the afternoon previous to the accident plaintiff had passed through the gate and shut it after him, and it is supposed that some one went through the gate afterwards and left it open, though there is no positive evidence of that fact.

III. The law says such gates "must be hung and have latches or hooks, so that they may be easily opened and shut." That this gate was open at the time of the accident by reason of its defective condition cannot be doubted. If it had been maintained in the condition required by law, "hung" so that it could be easily opened and shut, it is fair to presume that any one passing through it would have shut it, but by reason of its defective condition the labor and difficulty attending the opening and shutting were such that it was likely to be left open by persons not having the same interest in protecting the premises as the owner. Plaintiff shows that he was careful and did shut the gate when he passed through it the afternoon before. It seems to me that before the defendant can take advantage of the act of a stranger in leaving the gate open (if such was the fact) it must first show that it had performed its duty and furnished

a gate which was "hung" and had a latch or hook for fastening, so that it could easily be opened and shut. Until the defendant shows this state of facts it ought not to be heard to claim exemption from the consequences of its neglect of duty. This is not like the case of *Fitterling v. Railroad* (79 Mo. 504), cited by appellant. There, whatever defect there was in the gate was not discovered till after the accident. The evidence did not disclose any knowledge or notice on the part of the defendant of any defect in the gate. But in the principal case it appears that the gate had been in the condition disclosed by the evidence for three months or more, and that defendant had every opportunity to know of its condition through the section foreman, Casey, who lived near the gate, and passed it several times every day, in time to have repaired it. Nor like *Laney v. Railroad* (83 Mo. 466), also cited by appellant, in which it also appeared that the defect was not discovered until a week after the accident; that the defendant had no notice of it, nor was it shown to have existed for such a length of time that the defendant could have discovered it by the exercise of reasonable diligence. In *Binicker v. Railroad* (83 Mo. 660), also cited by appellant, the evidence showed that the condition of the gate was in substantial compliance with the requirements of the law, but that it was opened by some one, and propped open. Hence defendant was not liable. It is true that the court also says "the same conclusion would also follow if they (the cattle) entered while it was negligently left unfastened by third parties." But the court was speaking of a lawful gate, certainly not one like that described in the principal case. Otherwise, if there had been an opening in the fence for a gate at the crossing, and, instead of a gate, defendant had heaped up brush in the opening, and if a stranger going through did not replace the brush the defendant would not be liable. The law does not simply require a barrier, such as will keep out stock

at a farm crossing, but "gates, to be hung and have latches or hooks, so that they may be easily opened and shut." Why this requirement? Because of the greater facility thereby afforded for ingress and egress, and because the greater the ease, and the less the trouble and labor of opening and shutting the gap, the more likely it will be closed and kept closed. If the gate in question was a sufficient one in the condition in which it was shown to be, then, in order to protect his premises and his property, plaintiff would have to station a person at the gate to see that it was dragged back in place every time it was opened, or to prevent strangers from going through it. Then why require any gate at all? If the gate need not be such as the law requires, how much of a gate, and what kind of one, shall be put up and maintained? The statute is plain and requires no construction. It plainly says what kind of a gate is necessary.

IV. If the instruction, numbered seven, asked by the defendant and refused, be the law, then section 809 of the Revised Statutes is a nullity.

PHILIPS, P. J.—This is an action to recover damages, under the double-damage act, for the killing of plaintiff's horse by one of defendant's trains of cars. The imputed act of negligence was the failure of defendant to keep a certain gate, placed by it as a private opening on plaintiff's farm, in repair, and for carelessly and negligently suffering the same to be "left out of repair and open."

The evidence was that the plaintiff lived about one mile and a half west of Harlem station, in Clay county. Defendant's railroad runs through plaintiff's farm. Near the farmhouse defendant had erected a gate for a private farm crossing. The gate was made of wire and boards. One of the posts had rotted off, so that it was supported entirely by the wires and planks. It had no latch or other fastenings. The only way it would open

and shut was by lifting up the gate and post and placing it in position.  This was so troublesome to persons passing through, that the result was that the gate, as a rule, stood open; and the plaintiff kept his horses up to avoid their escaping through this gate on to the railroad track.  This gate had been in this condition for two or three months prior to the injury complained of. Defendant made no repair of it during all this time, although its section foreman resided immediately at this gate, and passed and repassed it every day.

Plaintiff's evidence tended to show that, on the evening prior to the loss of his horse, he had closed this gate, on passing through it; that his horse escaped that night from his stable, and passed through the gate on to the railroad track, and was traced by the plaintiff, and other witnesses, from this point along defendant's track to where he was found dead, which was at a point west of the station of Harlem.  The animal was torn literally into fragments.  From Harlem station west to and over the bridge spanning the river, the defendant's cars run over the right-of-way and track of the Hannibal & St. Joseph Railroad Company, subject to the time-tables, etc., of the latter road, but in charge of defendant's employes and servants.

I.  The first contention of defendant is that there was no evidence to support the verdict, that the animal was killed by one of defendant's trains.  It is true that other trains than those of the defendant ran over this track from Harlem west into Kansas City; so that there was a possibility for the collision to have occurred with some other train.  But on careful examination of the evidence we are satisfied there was ample proof to entitle the plaintiff to the opinion of the jury.  In the first place the evidence showed conclusively that the horse entered upon defendant's track, west of the junction with the Hannibal track, and his tracks indicated that, from some cause, he was trotting and then running along this track, and had leaped over defendant's cattle-

guards in his trip. The collision occurred some distance from the point where his carcass was found; and the blood "spots" showed that he had been carried by the car going west for a considerable distance. The evidence further showed that early of the morning on which the horse was found dead, two of defendant's trains of cars passed, going into Kansas City. The engineer of the last train discovered the remains of this animal below the trestle works, where they had been knocked; and the evidence tends to show that several parties saw this dead animal in passing. The first train of defendant that passed that morning preceded the second about five minutes. The engineer of this first train, Dempsy, admitted that he saw the pony horse, which was the companion of the horse killed, but affirms that he was on the lookout and saw no animal on his track; that he struck no animal that morning, and did not see the horse lying near his track as he passed. If he was on the lookout, it is very remarkable that he should not have discovered the dead animal, as the engineer did who so quickly followed him. Superadded to which is the significant fact, that on the engine of this first train, when taken into the shops at Kansas City, were blood-stains on the tender, and the heart and liver of some animal were found on the truck boxes. The witness and counsel for defendant undertake to explain how this remarkable fact might be accounted for, on the theory that this more likely got upon the engine while the car was backing, or "scraping along" by the animal. But the witness did not state where any such backing occurred, nor was there any evidence of any other animal being in such relation to this train, on that trip, as to account for the "strong circumstance." At all events it was for the jury to pass upon these proved facts, and draw such reasonable inferences therefrom as to them seemed just. It was for them to say how much and how little of any witness's testimony they would accept, and how much they would reject. It was such a

remarkable incident, the presence of an animal's heart and liver on this engine, as should have excited especial wonder on the part of the employes of defendant, and have stimulated special inquiry on their part as to how it occurred. They do not appear to have troubled themselves about it. It was for the jury to say, under all the circumstances, whether the attempted explanation was satisfactory.

II. The chief contention on the part of defendant, and the only questions of any merit raised on this appeal, are as to its liability for the failure to keep the gate in repair, and the further incidental question whether the injury was occasioned by such neglect. Appellant contends that the gate being for the private accommodation of the adjacent land owner, it was not required to keep the same in repair ; and, at all events, it was as much the duty of the plaintiff to look after the gate, and notify the defendant of its imperfect condition, as it was the duty of defendant to repair it.

The first question is answered by the statute. Section 809 declares that, every railroad company "shall erect and *maintain* lawful fences on the sides of the road where the same passes through, along, or adjoining inclosed or cultivated fields, or uninclosed lands, with openings and gates therein, to be hung and have latches or hooks, so that they may be easily opened and shut, at all necessary farm crossings of the road, for the use of the proprietor or owner of the land adjoining such railroad, and also to construct and maintain cattle-guards where fences are required, sufficient to prevent horses, etc., from getting on the railroad ; and until fences, openings, gates, and farm crossings, and cattle-guards, as aforesaid, shall be made and *maintained*, such corporations shall be liable in double the amount of all damages which shall be done by its agents, engines, or cars, to horses, etc., escaping from or coming upon said lands, fields, or enclosures, occasioned in either case by the failure to construct or maintain such fences or

cattle-guards.    After such fences, gates, farm crossings,
and cattle-guards shall be duly made and *maintained*,
said corporation shall not be liable for any such dam-
ages, unless negligently or wilfully done."

From which it is too clear for question that the obli-
gation to maintain the gate is the same as to erect it in
the first instance.    But it is further argued, with much
plausibility, that the statute does not, in terms, impose
the double liability for a failure to erect and maintain
the gate.    This is based on the concluding clause of the
section above quoted, "by the failure to construct or
maintain such fences or cattle-guards."    The argument
is that it omits to name the gate in this connection, and
this being in the nature of a penal statute, it must be
strictly construed, which is more specious than sound.
The whole section must be taken into consideration.
Throughout, the duty to build and maintain the gate is
expressly imposed upon the company.    This section
deals exclusively with the double-liability penalty, and
was designed to inflict it upon the corporation for any
disregard of its mandates.    If the double liability does
not apply to the omission to maintain the gate, no pen-
alty, or damage whatever, is imposed by the statute.
But the patent vice of the argument of counsel lies in
not recognizing the fact that the gate is part of the
fence itself.    The language of the statute leaves no
reasonable ground for questioning this fact.    The cor-
poration shall "erect and maintain lawful fences * * *
*with* openings and gates therein."    The preposition
"with" shows that the gate is a part of the fence.    This
opening is merely for the accommodation of the farmer,
and the fence must be made *with* a gate, and so main-
tained.    So when the conclusion of the sentence is "by
the failure to construct and maintain such fences," it
means, necessarily, the fences prescribed in the preceding
part of the section, "with openings and gates."    The suc-
ceeding clause of the section, "after such fences, gates,
etc., shall be duly made and maintained, said corpora-

tion shall not be liable for any such "damages" still further strengthens the position. The "such damage" means the double damage; and it applies as well to the gate as any other part of the fence. Why exempt the corporation from such damage, after it has built and maintained the gate, if it were not the intention of the framer of the preceding part of the section to impose the double liability for the failure to build and maintain it?

The gate has ever been regarded by the Supreme Court as part of the fence, and the railroads as liable for double damages for failure to keep them in repair. *Binicker v. Railroad*, 83 Mo. 660; *Fitterling v. Railroad*, 79 Mo. 505. The suggestion that it was as much the duty of the plaintiff to watch and keep the gate closed, and in repair, as that of the defendant, we must hold not well taken. So far as this jurisdiction, at least, is concerned, this question has passed *in rem judicatum*. *Parks v. Railroad*, 20 Mo. App. 442; *Davis v. Railroad*, 19 Mo. App. 415; *Solver v. Railroad*, 78 Mo. 528; *West v. Railroad*, 26 Mo. App. 344.

III. The more important contention of appellant is, that inasmuch as the horse escaped onto the track by reason of the gate probably being left open in the nighttime, by some third person passing through it; and there being no proof that defendant had notice of the open condition of the gate, in time to have it closed before the horse escaped, it is not liable. It has been repeatedly held, by the Supreme Court of this state, that after the railroad company has erected the gate, required by statute, it is not expected to stand perpetual guard over it to keep it closed against the act of third parties in leaving it open; and that if stock escape thus, before the servants of the company have notice of the fact of the gate being open, or reasonable time in which to discover the fact, no liability attaches.

The strongest case of this character, favorable to the defendant, is that of *Ridenour v. Railroad* (81 Mo. 227).

It would seem, at first impression, that this and other cases might be decisive of this case. But the chief difficulty, in my mind, is as to one element of fact in the case at bar, which distinguishes it, in a marked degree, from all others to which our attention has been directed. It is this : The gate in question had been out of repair for two or three months prior to the injury. The post was entirely rotted off at the ground, so that the gate could be opened and shut only by being lifted up and carried into place by every person passing through it. The attendant labor and trouble was so great that the result was, as a rule, the gate was left open. This fact, the law presumes, was known to the defendant, for its section foreman resided immediately at this gate, and passed and repassed it every day. If he did not discover its condition, and the fact of its habitually standing open in consequence thereof, it was such gross neglect of duty, that the law will presume notice.

Such a gate was not the one required by the statute. The gate must " be hung and have latches, or hooks, so that it may be *easily opened and shut*." One of the objects of this specific requirement, I take it, was to guard against the very contingency of the gate being left open when not "easily opened and shut." This gate, in contemplation of the statute, was not hung. It possessed scarcely any of the statutory requirements. And the sooner the railroad companies learn, and act upon it, that such gates are mere excuses, and evasions of the law, the better for them and the public. It is furthermore a distinguishing feature of this case, that the direct consequence of the obvious defect in this gate was its constant liability to be left open, and the exposure, day and night, of plaintiff's stock to escape through it onto the railroad track.

The only question, therefore, to be decided is, did the neglect to keep this gate in repair, in the manner shown by the evidence, occasion the injury complained of ? In the cases decided by the Supreme Court, it

could well be said, that the injury resulted directly from the wrongful act of some third party, without the active coöperation of the company, in leaving the gate open. While in this case, the wilful omission of duty, on the part of the defendant, led directly to the act of leaving the gate open, or the leaving the gate open was so habitual, and consequential upon the condition in which defendant left it, for a space of two or three months, as to be said to have been within the range of reasonable probability ; and the defendant should have reasonably anticipated the result.    Among the well-established rules of consequential damages is the following : "The innocent or culpable act of a third person may be the immediate cause of the injury, and still an earlier wrongful act may have contributed so effectually to it as to be regarded as the efficient, or at least concurrent and responsible cause." Suth. on Dam. 64.    And while it is true, generally, that where the wrongful act of one party affords only the occasion for the illegal or wrongful act of another, it is too remote as to the first wrongdoer; yet this rule is always subject to the qualification, "unless the injury thus ensuing was such as was likely, according to the general experience, to happen from such conduct ; or where the misconduct offering such opportunity consists in the omission of some precaution it was the defendant's duty to take against such loss as has occurred." Suth. on Dam. 70.

It was upon this idea that it was held in *Byrne v. Wilson* (15 Irish Crim. Law, 332–342), that the owner of a stage coach was responsible where the driver, through negligence, precipitated the coach into a dry canal, and the lock-keeper thereafter carelessly opened the gates of the canal and a passenger was drowned. O'Brien, J., said : "It is true that the subsequent letting of the water into the lock was the other, and more proximate, cause of her death, and that she would not have lost her life but for such subsequent act, which was not the neces-

sary consequence of the previous precipitation by the negligence of the defendant's servants. But, in my opinion, the defendant is not relieved from liability for his primary neglect by showing that, but for such subsequent act, the death would not have ensued." It is pursuant to the same principle that the courts hold railroad companies liable for the injury done to a child by leaving a turn-table unlocked. Although, but for the table being put in motion by another child, no injury would have resulted, yet the liability attaches because of the primary negligence, and the reasonable probability to be anticipated of the secondary cause resulting. As said by Norton, J., in *Nagel v. Railroad* (75 Mo. 661), after holding that the probable result should have been foreseen : " Not having been provided against, the original negligence continued and remained a culpable and direct cause of the injury, and the test is to be found in the probable injurious consequences which were to be anticipated, not in the number of subsequent events and agencies which might arise." Accordingly, it was held, in *Boggs v. Railroad* (18 Mo. App. 274), that where the company had omitted to repair an opening in its fence, through which plaintiff's colt escaped onto the road, and was injured by being frightened by the locomotive, which impelled it to jump over a barbed wire fence to escape, that the company was liable for the first neglect as the prime cause.

IV. We have not reviewed the instructions in detail, so elaborately argued by counsel, for the reason, that the only question of fact about which there could be any reasonable controversy, was whether the defendant's cars collided with the horse. This issue was sharply put to the jury in the instructions given by the court. The facts respecting the condition of the gate, and the escape of the horse through it being almost indisputable, the only question was as to the law raised by the appellant at this bar. The jury having found the issue for the plaintiff as to the actual collision, it

followed that the judgment should have been for the plaintiff, there being little question as to the other facts.

The other judges concurring, the judgment of the circuit court is affirmed.