## HARRISON v. KANSAS CITY ELECTRIC LIGHT COMPANY, Appellant.

Division One, April 20, 1906.

1. **CONCURRENT NEGLIGENCE.** The doctrine of concurrent negligence is firmly rooted in the jurisprudence of this State. A defendant may be liable even if the accident was not caused by his sole negligence. He is liable if his negligence concurred with that of another, or with the act of God, or with an inanimate cause, and became a part of the direct and proximate cause of the injury, although not the sole cause.

2. ————: **Electricity: Grounded Wire: Proximate Cause: Negligence of Servant: Imputable to Master.** Branches of a tree in the yard of deceased extended over defendant's arc light wire, and by reason of the movement of the wind rubbed the insulation off of the wire from four to six inches, and at this point of contact sparks of light were thrown off. At that point when the electric current was not on, deceased's son tapped the wire with a copper wire, which he wrapped about the tree and ran down into the ground. There was a swing attached to the tree, the ropes of which were made of steel cable, which was longer than was necessary for the swing, and the loose end had, therefore, been wrapped around the tree. After the electric current was turned on, the boy got an ax and chopped the copper wire in two about four feet from the ground, and then went away. His father came out of the house, walked towards the swing, took hold of it, and was instantly killed. It is conceded that if there had been only one "ground" no damage would have resulted to any one, and that no injury would have resulted to deceased had not the boy cut the copper wire. Defendant had sent out a lineman who discovered before the current was turned on that a wire was grounded somewhere along the twenty-mile circuit, but did not locate it, and the current was turned on without waiting to locate it. *Held*, first, that the negligence of the lineman was the negligence of the defendant, and if he failed to report the

fact that he had not discovered and remedied the trouble, his failure is imputable to defendant; second, the defendant was negligent in turning on the current after it knew there was trouble, without making a test at the main office to discover the true state of affairs; third, the fact that its negligence would not have resulted in the injury to deceased except for the independent intervening negligence of the son, does not relieve defendant of liability, for the act of the son could not have produced the injury, unless there had been a second "ground" somewhere else and unless defendant had turned on the current; and, fourth, the defendant's negligence was, therefore, a direct and proximate cause, or one of the direct and proximate causes, which concurred with the act of the son to produce the injury, and, under the rule in this State, defendant is liable.

3. ———: ———: ———: **Unheard of Injury.** Defendant cannot contend that the injury was unheard of and unprecedented if the evidence disclosed that defendant had had one previous experience of the kind.

4. ———: ———: ———: **No Duty to Citizen.** An electric lighting company cannot contend that it owed no duty to a householder, not to injure him by permitting the limbs of trees in his yard to rub off the insulation from its live wires, and thereby make it possible by the attachment by a trespasser of a wire at the noninsulated place, for the householder to be killed by escaping electricity.

5. ———: ———: ———: **Trespasser: Reasonable Anticipation.** Defendant cannot be excused on the ground that it could not reasonably have been anticipated that a trespasser would form a connection between defendant's noninsulated wire and the wire wrapped around a tree in the injured party's yard, if the defendant's negligence in permitting the wire to become noninsulated and a ground circuit to be formed is shown. The negligence having been shown, the person guilty of it is liable for its consequences.

6. ———: **Instruction: Proximate Cause.** The use of the words "proximate cause" in an instruction, especially when used in the connection in which they are found in the instruction in this case, is no ground for reversing the judgment.

7. **EVIDENCE: Erroneous: Excluded.** A judgment will not be reversed because the court erroneously admitted evidence, if it afterwards excluded it from the consideration of the jury.

8. ———: ———: **Harmless.** The judgment will not be reversed if evidence erroneously admitted could not have influenced the verdict.

Appeal from Jackson Circuit Court.—*Hon. James Gibson*, Judge.

AFFIRMED.

*Harkless, Crysler & Histed* for appellant.

(1) It is well settled that in determining the question of negligence it must be decided with reference to the duty that the defendant owes to the injured, and not its duty to others, generally. Feeback v. Railroad, 167 Mo. 215; Roddy v. Railroad, 104 Mo. 234. (2) It is error to admit evidence tending to show negligence on the part of the defendant in reference to matters wholly foreign to and unpleaded in the petition. Conway v. Railroad, 24 Mo. App. 235; Hicks v. Railroad, 68 Mo. 329; Brooks v. Blackwell, 76 Mo. 309. (3) The proximate cause of this accident was not the negligence of defendant, but was the affirmative act of the trespasser, Harold Harrison, in diverting the electricity from the public streets and carrying it inside of the residence of the deceased. Witte v. Stifel, 126 Mo. 295; Fuchs v. St. Louis, 167 Mo. 620; Hector v. Boston El. Co., 174 Mass. 212; Light Co. v. Koepp, 64 Kan. 735; Railroad v. Kellogg, 94 U. S. 469; Diesenreiter v. Kraus, 96 Wis. 286; Cole v. German, 124 Fed. 113. (4) Instruction 1 given for plaintiff was clearly erroneous for the following reasons: First. It made defendant respond simply if the jury found that somebody was liable to divert the current. Second. It made defendant respond if there was a probability that it would be diverted. Third. It made the defendant liable if the jury found that the current was transmitted under circumstances claimed by plaintiff, and thus referred the jury to the indefinite proposition as to what plaintiff might claim. Fourth. It submitted to the jury the question for them to determine whether the act of defendant was the proximate cause of the

death, when it should have been the duty of the court to have informed the jury what would constitute proximate cause and would make defendant liable, and not leave it to them to declare the law as to what constituted proximate cause. Fifth. It positively assumes upon its face as a fact established that "two grounds" had existed, and that it was "so grounded at two places as to divert sufficient electricity to kill a man."

*Morgan & Schibsby* and *Boyle, Guthrie & Smith* for respondent.

(1) Persons, who for their own private gain or profit send the dangerous agency, electricity, out into the streets and alleys of a city, are bound to use the utmost care in preventing the escape from the wires of the electrical current to the injury of others. Geismann v. Electric Co., 173 Mo. 678; Winkelman v. Electric Light Co., 110 Mo. App. 184; Girarandi v. Electric Imp. Co., 107 Cal. 124; Haynes v. Gas Co., 114 N. C. 211; McLaughlin v. Louisville Electric Light Co., 100 Ky. 173; Perham v. Portland Electric Co., 33 Ore. 451; 1 Thompson on Negligence (2 Ed.), sec. 797; Denver Electric. Co. v. Simpson, 21 Colo. 371; Leavenworth Coal Co. v. Ratchford, 5 Kan. App. 150; Frauenthal v. Gas Light Co., 67 Mo. App. 8; Larson v. Railroad, 56 Ill. App. 267. (2) Such persons are bound to the utmost care in inspecting the wires carrying the electrical current and to remove or remedy any defects thereon, no matter how created or by whose fault or act. Geismann v. Electric Co., 173 Mo. 678; Winkelman v. Electric Light Co., 110 Mo. App. 184; Griffin v. United Electric Light Co., 164 Mass. 492; Mitchell v. Light & Power Co., 45 S. C. 146; Cook v. Electric Co., 9 Houston (Del.) 309; Texarkana Gas & Electric Light Co. v. Orr, 59 Ark. 215; Leavenworth Coal Co. v. Ratchford, 5 Kan. App. 150; Railroad v. Owings, 97 Ga. 666; 1

Thompson on Negligence (2 Ed.), sec. 802; Turton v. Electric Co., 185 Pa. St. 409; Larson v. Railroad, 56 Ill. App. 267; Haynes v. Gas Co., 114 N. C. 211; Railroad v. Shelton, 89 Tenn. 423; Illingsworth v. Light Co., 161 Mass. 583. (3) These duties it owes to all persons who are injured at places where they are entitled as of right to be for purposes of business or pleasure. Geismann v. Electric Co., 173 Mo. 674; Ennis v. Gray, 87 Hun 359; Griffin v. Electric Light Co., 164 Mass. 492; Perham v. Portland Electric Co., 33 Ore. 477; McLaughlin v. Electric Light Co., 100 Ky. 173; Railroad v. Owings, 97 Ga. 666; Overall v. Electric Light Co., 47 S. W. 442; Girarandi v. Electric Imp. Co., 107 Cal. 120. (4) A defendant who has failed to exercise ordinary care will not be excused by the fact that the injury in its manner of occurrence could not reasonably have been anticipated. It is sufficient that the injury is the natural result of some act or omission of the defendant's, which the defendant could reasonably anticipate would probably cause some injury. Hoepper v. Southern Hotel Co., 142 Mo. 378; Miller v. Railroad, 90 Mo. 394; Graney v. Railroad, 140 Mo. 98; Smith v. Railroad, L. R. 6 C. P. 20; City of Dixon v. Scott, 181 Ill. 116; 21 Am. and Eng. Ency. Law (2 Ed.), 488. (5) A defendant whose negligent acts or omissions have directly contributed to plaintiff's injury will not be excused by the fact that other causes for which he was not responsible have also contributed proximately to the injury in such a manner that but for them the injury would not have happened. Lore v. American Mfg. Co., 160 Mo. 626; Bassett v. St. Joseph, 53 Mo. 300; Musick v. Dold Pkg. Co., 58 Mo. App. 322; Brennan v. St. Louis, 92 Mo. 482; Hull v. Kansas City, 54 Mo. 598; Waller v. Railroad, 59 Mo. App. 426; Meade v. Railroad, 68 Mo. App. 101; McDermott v. Railroad, 87 Mo. 301; Ring v. Cohoes, 77 N. Y. 83. (6) Errors committed during the trial of a cause must be embraced in the motion for a new trial or they cannot be com-

plained of in this court. St. Louis v. Siefer, 111 Mo. 662; Mays v. Mays, 114 Mo. 539; Needles v. Ford, 167 Mo. 513.

MARSHALL, J. — This is an action under the statute for $5,000 damages for the death of plaintiff's husband, on the 24th of April, 1902, caused by an electric shock from the defendant's wire in Kansas City, Missouri. The action is by the widow. A prior action had been brought by the widow within six months after the death, in which the plaintiff suffered a nonsuit, and this action was brought within one year thereafter, as allowed by the statute. There was a judgment for the plaintiff for $5,000, and the defendant appealed.

THE ISSUES.

The petition alleges the relation of the plaintiff to the deceased, and his death on the day stated; the fact of such prior suit, nonsuit, and the institution of this action within the statutory time; the incorporation of the defendant; that it owned a certain electric powerhouse and electric light circuits connected therewith in Kansas City, used by it for the purpose of lighting the streets of said city; that it was the duty of the defendant to maintain and operate the same, as far as ordinary and reasonable care would avail therefor, so that the same should be in a reasonably safe condition and not liable to endanger lives and property of others. The negligence charged in the petition is as follows:

"That on and for sometime prior to about the 24th day of April, 1902, a certain of said arc light circuits owned and operated by the defendant company, and known, as plaintiff is informed, as circuit No. 32, was in a dangerous and defective condition, in that it was 'grounded' — that is to say, that on account of defects in the insulation of said circuit, the wire or wires on said circuit had come into electrical contact with the earth at some place or places to plaintiff unknown, so

that upon said circuit becoming grounded at any other place or places, a heavy and dangerous volume and charge of electricity was liable to pass from said circuit to and through any person or persons who might be so situated that said charge of electricity should pass through the body of such person or persons and through the earth in what is commonly known as a 'short circuit' and thereon back to said circuit through such other grounded connection or contact, to the serious or fatal injury of the person so affected, and who are liable to come into contact with the current so recklessly released and discharged from said circuit and its proper course, without knowledge or notice that said current was being so diverted and discharged; that by reason of said circuit being so grounded on or about and prior to April 24, 1902, at some place or places to plaintiff unknown, conditions so arose that the wire of said circuit at and near the place of residence of the plaintiff and her deceased husband, came in contact with trees near and adjacent and contiguous to which the defendant had carelessly strung the wire of such circuit, so as to burn said trees, including a tree upon the premises of the plaintiff and her deceased husband; that the volume of electricity passed along the wire or wires of said circuit or circuits was such as when diverted and passed through an inferior conductor, such as the wood of trees or the human body, would in passing through the same, burn said wood, and injure or destroy the life of such human being or beings.

"That on or about the 24th day of April, 1902, the said circuit being 'grounded' as aforesaid, at some place or places to the plaintiff unknown, and other than at the place immediately hereinafter described, upon the premises of the plaintiff and her deceased husband, Harold, the infant son of the deceased, who knew nothing of the danger of electricity, having discovered that one of the trees upon the premises of the plaintiff and

her deceased husband had been burned by the contact of such tree with the wires of said circuit, which was defectively and insufficiently insulated through the carelessness and negligence of the defendant in locating same, so that same was liable to abrasion and destruction, in order to save said tree from further injury, at about the hour of 4:30 o'clock in the afternoon, connected to the wire of said circuit of the defendant, at a place where same was endangering and injuring said tree through such defective insulation, a small copper wire, and continued said copper wire into contact with the ground; that upon the said tree aforesaid, there was suspended a swing for the pleasure of the plaintiff's children, constructed of a hanging loop of wire cable suspended from two points of support on a limb of said trees, and supporting a wooden seat in which said children, and others, were accustomed to swing; that said wire cable, so made into said swing, was longer than was necessary for such purpose, and the loose end thereof was wound around the limb of said tree, and down to and around the trunk of said tree, before reaching the ground; that said Harold, after so connecting said copper wire, as aforesaid, conducted the same from said tree down and around the trunk of said tree, so as to bring same in contact with the wire of said cable and bring said cable into electrical contact with the wire of said circuit; that said copper wire being so conducted to and into the ground, the charge of electricity discharged from said circuit passed harmlessly along and through said wire, down and into the ground and through the ground to some other place or places to the plaintiff unknown, to where the circuit was grounded, back into said circuit and through the same returned to the power-house of the defendant. That about the hour of 7:25 o'clock in the evening of said day, said Harold noticed that said copper wire or the wire of said circuit of the defendant, was again burning said tree where same came into contact therewith, and in an

endeavor to prevent the further injury to said tree, cut off said copper wire between the ground and said tree, so as to leave said copper wire and the said wire of said cable of which said swing was constructed, in electrical contact with the wire of said circuit, but without electrical connection with the ground other than through the insufficient and poor conductor which the trunk of said tree and the roots thereof made; that almost immediately thereafter, the plaintiff's deceased husband came out into said yard for the proper purpose of speaking to or associating with the children playing about the same, and in entire ignorance of the electrical connection of the cable to said swing, as aforesaid, with said circuit of the defendant, placed his hand in contact with said cable, whereupon said Harrison became part of an electrical connection between said cable and the earth, and the circuit of the defendant, at such other place or places where same had been negligently allowed to become and remain grounded, so that a powerful charge of electricity passed from the wire of said circuit adjacent to said tree, through said copper wire, the said cable and the body of said Harrison, down and into the ground and through the same, through said grounded current connection elsewhere, and back into the circuit of the defendant, causing the instant death of said Harrison.

"That the electricity of the character generated by the defendant in said power-house and discharged along and over and through the said wires of said circuits, will follow what is known in electrical science as the easiest or readiest conductor in preference to a non-conductor, or some other conductor over which it is compelled to pass, with greater resistance, that the wires used by said boy Harold are among the best known conductors of electricity, and that iron wire, such as said cable, is a first-class conductor of electricity, and while said cable and wire were directly connected with the ground, the electricity passed directly and harmlessly

through same and into the ground, but when such copper wire was cut, there was no connection except through the trunk of said tree until the person of said Harrison touched the wire of said cable, when said electricity immediately diverted itself in sufficient volume to kill said Harrison, and passed through the body of said Harrison, through the ground and on as aforesaid; that the volume and character of electricity generated by defendant at said power-house and discharged over and through said circuits is many times greater than the amount necessary to produce a fatal injury when discharged through the human body, all of which, as well as the tendency of said electricity to pass through the human body, if parts of the human body should come in contract with metal connected by contact with said currents, when such human body would afford the readiest conductor of said electricity to and through other conductors in a circuit through which such electricity could pass, was or should have been well known to defendant; that long prior to the hour of 7:25 o'clock in the evening of said day, the defendant, through its officers, agents and employees at said power-house had notice that said circuit had been so grounded that charges of electricity passing over the same were liable to be diverted and might be so diverted as to produce fatal or serious injuries to persons inadvertently coming into the course of and becoming part of the conductor in the transmission of said electricity; that if defendant had had, as it should have had, such means and appliances as are well known to the science of electricity and to persons familiar with the operation of such power-house and circuits in use at such power-house, it could have promptly ascertained that said circuit had been grounded and located the place or places where its said circuit was so grounded, and remedied said defect and removed said dangerous condition, but through lack of such appliances, and the carelessness of the defendant, its ser-

vants, agents and employees, in failing to locate the places where said dangerous condition existed after it had, or should have had, notice that such dangerous condition did exist at places on said current, such dangerous conditions were not located and remedied, but recklessly and negligently the defendant, through its agents, servants and employees, caused to be transmitted through and over the wires of said circuit, a charge of electricity many times greater than sufficient to produce fatal injuries to a human being, whereby, and by reason of which, the plaintiff's husband met with such fatal injuries, without negligence or fault upon his part."

The answer is a general denial.

The case made is this:

The defendant is an electric light company, and is engaged in the business of lighting streets and residences in Kansas City, Missouri, and Kansas City, Kansas. It had a circuit called No. 32, which was twenty miles long. Its plant in Kansas City, Missouri, was located at what was called Turkey Creek station. That station is three miles from the plaintiff's residence, which was located on Tenth street near Woodland. Circuit No. 32 is designated as a "lamp loop" to distinguish it from the main or trunk line. Turkey Creek station runs day and night, but during the daytime the electricity for lighting arc lights on the streets is not turned on, and the plant runs for the purpose of furnishing electric lights to residences and places of business. Circuit No. 32 runs in front of the plaintiff's residence, and had been erected about a year prior to the accident. The wire was strung upon poles which stood between the curbing of the street and the sidewalk. The poles were about twenty-five feet high. An arm ran across the top; one wire hung on one side of the pole and one on the other. The Harrison residence stood about twenty-three feet back from the street. There was a large tree standing in the yard in front of

the house, and about two feet inside of the yard fence. The branches of the tree extended out over the sidewalk, so that the ends thereof, about the size of a lead pencil, came in contact with the arc wire of said circuit. The wires were located about twelve feet from the body of the tree. The branches of the tree that came in contact with the wires, by reason of their movement by the wind, had rubbed the insulation off of the wire for from two to six inches. For a month or two prior to the accident, persons living in the neighborhood had observed that at the point of contact between the branches of the tree and the electric wire in front of the Harrison residence, as also at other points where similar conditions existed, sparks or flashes of light would be thrown off from the wire when the limbs of the trees were moved by the wind, and the trees, themselves, had been injured by their branches coming in contact with the wires. The deceased had a son named Harold, who was fourteen years of age, a boy of considerable intelligence and aptness and with an inclination to experiment with electricity. Prior to the accident he had rigged up an alarm bell, worked by electricity, in the barn, back of the house, and his parents knew of that fact, and knew of his electrical proclivities. About a month prior to the accident the boy conceived the idea of tapping the defendant's wire at the point where the branches of the tree came in contact with it. On the day of the accident he returned from school about 4:15 or 4:30 o'clock p. m. He took a copper wire, which was thirty-five feet long, that he had been using for the alarm bell, and made a hook about one foot long out of a piece of galvanized iron. He fastened the hook to the end of a stick; then he climbed the tree, went out on the limb, attached the hook to the defendant's electric wire at the point where the insulation was worn off, nailed the stick, to which the hook was attached, to the limb of the tree, attached the copper wire, which had no insulation on it, to the hook,

and wrapped the wire around the tree, ran it down into the ground, and thence along the edge of the sidewalk to a point near the front of the house. There was a swing attached to one of the limbs of the tree, the ropes of which were made of steel cable about three-fourths of an inch in diameter. This steel cable rope was longer than was necessary for the swing and the loose end of it had been wrapped around the tree. The boy says that his purpose in so doing was to protect the tree from being injured by the electricity which escaped from the wire to the branch of the tree that rested against it. He says he knew the danger of undertaking to make a connection with the arc wire while the current was on, and also knew that the current was not on the wire during the daytime, nor was it on at the time he made the connection. He says he completed his scheme about 5 o'clock p. m.

During the day of the accident the defendant knew that there was trouble on this circuit No. 32, and about two to half-past three, or perhaps a little later, the defendant sent out one of its linemen to find where the trouble was and to remedy it. The defendant knew that the trouble consisted in the fact that the wire was "grounded" somewhere on the line, exactly where it did not know, nor had it any means of knowing or ascertaining except by sending out a "trouble man" to locate it. The lineman took with him an instrument, called a "magneto box," for the purpose of locating where the "ground" or "grounds" existed, which caused the trouble. That instrument is attached to the wire and is operated by a crank, thereby producing a light current of electricity, not sufficient to injure anyone, but enough to ring a bell. When so attached and operated if there is a "ground," the bell will ring and indicate on which side of the box the ground exists, but will not indicate the point on the wire where the trouble is. In order to locate the exact point of trouble it is necssary for the lineman to make such

experiments along the line until the point of trouble is located. The lineman left the downtown office sometime between 2 o'clock and 4:55 o'clock. He first said it was between 2 and 3:30 o'clock, but afterwards said that it was not until after the report was received that there was trouble on the circuit. He says it would take four or five, and not to exceed ten minutes, to make each test; he further says that he made about six tests, covering about two miles and consuming about forty minutes. He further says that he made the first test at Twelfth and Brooklyn streets, the second at Eleventh and Prospect, the next at Ninth and Prospect. These are all of the points at which he can definitely state that he made any tests. A record was kept and introduced in evidence showing at what time the report of trouble was received and at what time the trouble was located and corrected. That report showed that the trouble was first reported at 4:55 p. m., and that the lineman reported circuit "No. 32 O. K. at 5:15 p. m." The lineman says that he never located the trouble, but that after making the tests aforesaid he concluded that the trouble was not on circuit No. 32, but was on the trunk line, and that in making his report at 5:15 that No. 32 was O. K., he meant that he had cleared the line so far as he was concerned; that is, that the current of electricity could be turned on without injury to him, and that he did not thereby mean, necessarily, that he had located and remedied the trouble. The report further showed "All O. K. at 4:55 p. m. except No. 18 — 32 up town." Where No. 18 was or what was done with reference to it, does not appear in the abstract of the record. The report further shows, as above indicated, "No. 32 O. K. at 5:15 p. m." After that report was received nothing further was done looking towards ascertaining whether the line was "clear" or whether the trouble had been remedied, but without making any further tests the current of electricity was turned on at 7:25 p. m.

The testimony disclosed that the voltage, meaning the force or pressure of the electricity, was 33 hundred volts, and the amperage, meaning the quantity of electricity, sent over the wire under such pressure, was 6 1-2 amperes, and that one-fourth to one-half of an ampere in quantity transmitted under a pressure of 1,000 volts or pressure, is fatal to human life.

The deceased returned to his home only a few minutes before his death, say about 7 o'clock p. m. The boy, and some of his boy friends, were playing in the front yard. The deceased ordered his boy to go into the house and stay there and told the other boys to go home. It had been raining that day and was quite damp. After going into the house his boy again went out in the front yard. About ten minutes before the accident, the boy noticed that the electricity had been turned on, and that the light at Tenth and Woodland was burning, though not as brightly as usual. He further noticed that the tree aforesaid commenced to burn. The boys, who had been ordered away, called his attention to the fact that the tree was burning. He caught hold of the wire to pull it down, and it shocked him. He then went around the house and got an ax and chopped the wire in two about four feet from the ground, where it ran down on the side of the tree on the inside of the yard. He then noticed that one of the wires still continued to burn. He stood there watching it, and his father came out of the house a second time and ordered him to go in the house. The deceased then walked towards the swing and took hold of it, and was instantly killed. The boy says that from the time the current of electricity was first turned on until his father was killed there was an interval of only about fifteen minutes. The boy says he did not warn his father against taking hold of the steel rope of the swing, because he did not have time to do so, because of the excitement and because he did not know there was any current of electricity in the steel rope. The evidence

discloses, however, that copper wire is one of the best conductors of electricity that is known, and that while the wire was "grounded" the current of electricity would leave the electric wire of the defendant, pass through the copper wire into the earth at the point where it was "grounded," thence through the earth to the nearest point where there was another "ground," and thence back to the wire and so on around the circuit. This is called "short circuiting." The evidence further discloses that a tree, a telephone, telegraph, district messenger or other wire coming in contact with the arc wire will ground the current of electricity, and that a live tree, a human being, or any metallic substance is a conductor of electricity, varying somewhat in the character of the conductor; that electricity will always follow the best conductor, although some of it may be diverted from the arc wire even by a less efficient conductor. The evidence adduced by both parties further shows, and it is admitted by counsel, that where there is only one "ground" it is harmless, and that in order to produce injury there must be two "grounds," and that when there are two "grounds," if a person comes in contact with one of them, his body will form a part of the circuit through which the electricity will pass, and if the electricity is of sufficient force and quantity it will result in injury.

Mr. Richardson, the general manager of the defendant, testified, on cross-examination, that if there were two "grounds" and the wire had not been cut by the boy, as above described, but had been allowed to remain "grounded" or to lie on the ground, a current of electricity would have flowed over the copper wire, and if a man took hold of the copper wire the electricity would pass through his body.

This is a sufficient statement of the facts and there is no substantial controversy about them. Upon this showing, the defendant claims:

First, that even conceding that there was another "ground" and that the defendant was negligent in not discovering and remedying it, nevertheless, that negligence of the defendant was not the proximate cause of the injury, but that the cutting of the copper wire by the boy was the proximate cause of the injury, and that act having been done after the current of electricity was turned on, and when it was impossible to test the wire for "grounds," the defendant is not liable.

Second, that the defendant was only bound to exercise ordinary care and vigilance; that it owed no duty to the deceased, and that the injury was caused by the unexpected, unanticipated and heretofore unheard of extraordinary act of a trespasser, for which the defendant is not liable.

Third, that the court erred in giving erroneous instructions for the plaintiff, and,

Fourth, that the court erred in admitting incompetent evidence offered by the plaintiff.

I.

The first contention of the defendant is that even conceding that there was another "ground," and that the defendant was negligent in not discovering or remedying it, nevertheless, that negligence of the defendant was not the proximate cause of the injury, but that the cutting of the copper wire by the boy was the proximate cause of the injury, and that act having been done after the current of electricity was turned on, and when it was impossible to test the wire for "grounds," the defendant is not liable.

The case has been remarkably well briefed and argued by counsel on both sides. A multiplicity of cases, both from this and other States, have been cited by counsel on both sides, and the question of proximate cause has been very thoroughly gone over. It would be impossible in a single opinion to review the cases and analyze fully the law as declared by the many

decisions and the text-writers bearing upon this question. The proposition of law involved has been so often discussed and decided by this court that it is unnecessary to look elsewhere for authority. The law is well settled in this State that the doctrine of comparative negligence does not obtain in this State. The doctrine of concurrent negligence is firmly rooted in the jurisprudence of this State. The law is well settled in this State that "a defendant may be liable even if the accident was not caused by his sole negligence. He is liable if his negligence concurred with that of another, or with the act of God, or with an inanimate cause, and became a part of the direct and proximate cause, although not the sole cause." [Newcomb v. Railroad, 169 Mo. l. c. 422, et seq., and cas. cit.]

In Brash v. St. Louis, 161 Mo. l. c. 437, the negligence of the city complained of combined with the act of God. BRACE, J., speaking for the court, quoted the rule laid down in 1 Shearman & Redfield on Negligence (5 Ed.), sec. 39, as follows:

"It is universally agreed that, if the damage is caused by the concurring force of defendant's negligence and some other force for which he is not responsible, 'including the act of God,' or super-human force intervening, the defendant is nevertheless responsible, if his negligence is one of the proximate causes of the damage, within the definition already given. It is also agreed that, if the negligence of a defendant concurs with the other cause of the injury in point of time and place, or otherwise so directly contributes to the plaintiff's damage that it is reasonably certain that the other cause alone would not have sufficed to produce it, the defendant is liable, notwithstanding he may not have anticipated the interference of the superior force, which, concurring with his own negligence, produced the damage. But if the superior force would have produced the same damage whether the defendant had been negligent or not, his negligence is not deemed to cause

the injury." And it was there said: "And this is the prevailing doctrine in this State," citing cases.

In Vogelgesang v. St. Louis, 139 Mo. 127, the negligence of the city complained of consisted in permitting a small depression to remain in the street at the end of a bridge across a railroad track, which, under ordinary circumstances, would have been safe for public travel. Combined with this condition was the fact that an engine passing under the bridge suddenly emitted an unusual quantity of steam, thereby frightening the plaintiff's team and causing it to run away and injure the plaintiff. A recovery against the city was sustained on the ground that although the act of the city in permitting the depression to remain in the street would not, ordinarily, have been productive of any injury, yet when it combined with the other independent intervening cause — the emitting of steam from the engine—it was one of the direct and proximate causes of the injury.

In Bassett v. St. Louis, 53 Mo. 290, the negligence of the city consisted in leaving an excavation adjacent to a market place. The street, exclusive of the excavation, was sufficient for ordinary passage. The plaintiff was passing along that portion of the street when a mule kicked at her. To avoid being kicked she dodged and fell into the ditch. The city was held liable notwithstanding its negligence would not ordinarily have produced the injury, but because when combined with the independent, intervening cause — the kick of the mule — it was one of the proximate causes of the injury.

In Brennan v. St. Louis, 92 Mo. 482, the negligence of the city consisted in not repairing a ditch which had been washed across the street and sidewalk by the rain. The plaintiff, a three-year-old child, with her sister thirteen years old, who was pushing a baby carriage with a baby in it, was passing along the sidewalk close to the ditch, when another little girl came

up, stumbled against the plaintiff, and both fell in the ditch, and the plaintiff was injured. The city was held liable because its negligence concurred with the independent, intervening cause, and was one of the proximate causes of the injury.

Many other cases in this State might be cited illustrative of the rule in reference to concurrent negligence constituting proximate cause, but the foregoing cases are sufficient to demonstrate that if a defendant is negligent and his negligence combines with that of another, or with any other independent, intervening cause, he is liable although his negligence was not the sole negligence or the sole proximate cause, and although his negligence without such other independent, intervening cause would not have produced the injury.

Applying these rules to the facts in judgment the defendant must be held liable. It is conceded that if there was only one "ground" no damage would result to a person coming in contact with the substance constituting the "grounding" of the current. Or in this case, that if there had been no other ground except that created by the son of the deceased making the connection with the arc wire, no injury would have resulted. It is conceded that there must be two "grounds" in order to produce injury. Hence, it follows that there must have been some other "ground" at some other place than that made by the son of the deceased, as aforesaid.

The testimony discloses that at some time after two p. m. — the defendant claims the fact to be that it was at 4:55 p. m. — the defendant discovered that there was a "ground" on circuit No. 32, and sent out a man to locate it and remedy it. That man says he started at some time between two and half-past three p. m. The record of the defendant, introduced in evidence, recites that, "All O. K. at 4:55 p. m., except 18 — 32 up town." The defendant claims that this was the

195 Sup.—40

time the boy made the connection with the wire afore-
said. Conceding this to be true, and conceding that the
lineman started to discover the trouble at 4:55 p. m.,
the evidence discloses the fact to be that he made tests
at only three points that he can designate, covering a
space of two miles, and at a point other than in front
of the Harrison residence. How far it was from the
Harrison residence is not disclosed. The evidence
shows, however, that circuit No. 32 was twenty miles
long and that the lineman only tested two miles there-
of, and then sent in a report, "No. 32 O. K. at 5:15
p. m." The lineman says he did not discover where
the trouble was, but was of opinion that it was not on
circuit No. 32, but was somewhere on the trunk line.
The evidence further discloses that when a test is made
at the main office it will not disclose whether there is
or is not more than one "ground," nor will it disclose
the location of the "ground," and that those facts can
only be ascertained, with the means employed by the
defendant, by having tests made at different points
along the line. The lineman says that in sending in
that report, at 5:15 p. m., he did not mean to say
that the line was "cleared," that is, the trouble rem-
edied, but simply meant to say that the electricity
could be turned on without injury to him, as he had
quit experimenting. The evidence further discloses
that such tests cannot be made while the current of elec-
tricity is on the wire. After receiving the report at 5:15
p. m., the defendant, so far as this record discloses,
made no further attempt to discover whether the line
was "clear" before it turned on the current of electric-
ity at 7:25 p. m.

The defendant contends that if there was only one
"ground" no damage would have resulted to anyone,
and this is conceded by the plaintiff. Upon this basis
the defendant further claims that even if it had not
detected and remedied the "ground" made by the son
of the deceased before it turned on the current of elec-

tricity, no damage would have ensued unless there had been some other "ground" also existing.   Assuming this to be true, the question is, whether the defendant was guilty of negligence in turning on the current of electricity at 7:25 p. m., without making any other tests to discover whether there was trouble on the line.   It is conceded that it would only take four to five minutes to make such a test.   Reduced to its last analysis, therefore, the fact is that at some time before the current of electricity was turned on, the defendant knew that there was trouble on the line, that is, that there were one or more "grounds."   It sent out one of its linemen to remedy it.   That lineman did not do so.   The trouble continued; the current of electricity was turned on, and the accident ensued.   Whatever may have been understood by the servants and officers of the defendant as to the true meaning of the report sent in by the lineman at 5:15 p. m., the fact remain that the trouble had not been remedied, and the defendant had ample time in which to have done so, or else it should not have turned on the electricity until it knew that the trouble had been remedied.   The negligence of the lineman was the negligence of the defendant, and if he failed to report the fact that he had not discovered and remedied the trouble, his failure is imputable to the defendant.   Under the circumstances, there is no escape from the conclusion that the defendant was negligent in turning on the current of electricity after it knew that there was trouble, without making a test at the main office to discover the true state of affairs and without positively knowing that the trouble had been remedied.   The fact that its negligence would not have resulted in the injury complained of except for the independent intervening negligence of the son of the deceased, does not relieve the defendant from liability, for the act of the son of the deceased could not have produced the injury unless the defendant had turned on the current of electricity, nor unless there had also been

a second ground somewhere else. The defendant's negligence was, therefore, a direct and proximate cause, or one of the direct and proximate causes, which concurred with the act of the son of the deceased to produce the injury, and, under the rule in this State, the defendant is liable.

## II.

The second contention of the defendant is that the defendant was only bound to exercise ordinary care and diligence; that it owed no duty to the deceased, and that the injury was caused by the unexpected, unanticipated, and heretofore unheard of, extraordinary act of a trespasser, for which the defendant is not liable.

The testimony discloses that never before had any one so attempted to make a connection with an arc wire in Kansas City, Missouri, but that this defendant had had an experience of that sort with respect to the part of its system located in Kansas City, Kansas. As to this defendant, therefore, it cannot be said that the act of the son of the deceased in making the connection was an unheard of, unprecedented act.

The defendant contends that it owed no duty to the deceased. This contention is untenable. It employed one of the most insidious and dangerous agencies known to man. Electricity is more powerful for good and for evil than any other agency known to mankind. It is the most dangerous form of peril, for it moves unseen, unheard, gives no warning and may travel anywhere and everywhere. The defendant knew the character of the agency it employed, knew the means it employed for transmitting it for the good it would do, and knew the dangers to be apprehended from a "grounding" of its wires, and knew of the inevitable result to any person who might come in contact with that current when there were two "grounds." It knew that unless its system was in good order it was liable to injure some person at some time and place, or at any

time or any place, that such person came in contact with
it.

The point here made, that the defendant cannot
be held liable because the particular injury complained
of could not have been anticipated by any reasonable
man, or that it would not have occurred under common
experience, was decided adversely to that contention
by this court in Hoepper v. Southern Hotel Co., 142
Mo. 1. c. 388. It was there said:

"It is true, the negligent act must in all cases be
the proximate cause of the injury in order to make the
actor responsible therefor. But if the injury follows
as a direct consequence of the negligent act or omis-
sion, it cannot be said that the actor is not responsible
therefor because the particular injury could not have
been anticipated. A neglect to anticipate and guard
against that which no reasonable man would expect to
occur may not be negligence. 'If the wrong and the
damage are not known by common experience to be
usual in sequence; and the damage does not, according
to the ordinary course of events, follow from the wrong,
the wrong and damage are not sufficiently conjoined
or concatenated as cause and effect to support the ac-
tion.' [Citing cases.] But in case the negligence is
shown, 'and the injurious consequences are immediate,
and flow directly from the negligent act, the person
guilty of the act will not be excused for the reason
that the particular consequences were unusual, and
could not ordinarily have been foreseen.' [Graney v.
Railroad, 140 Mo. 98; 16 Am. and Eng. Ency. of Law,
432, and cases cited.] In Smith v. Railroad, L. R. 6 C.
P. 20, it is said by CHANNELL, B.: 'I quite agree that
where there is no direct evidence of negligence, the
question what a reasonable man might foresee is of
importance in considering the question whether there
is evidence of negligence for the jury or not; but when
it has been determined that there is evidence of neg-
ligence, the person guilty of it is equally liable for its

consequences, whether he could have foreseen them or not.' . . . So the evidence tends to prove the negligence and that the injury was the direct result thereof. It could make no difference whether or not defendant could have anticipated the particular injury.''

The same doctrine is laid down in Graney v. Railroad, 140 Mo. l. c. 98; Miller v. Railroad, 90 Mo. l. c. 395; Geismann v. Electric Co., 173 Mo. 654; Winkelman v. Electric Light Co., 110 Mo. App. 184; Morrison v. Railroad, 27 Mo. App. 418; Meade v. Railroad, 68 Mo. App. l. c. 101. And also obtains in other jurisdictions. [Griffin v. Electric Light Co., 164 Mass. l. c. 493; McLaughlin v. Electric Light Co., 100 Ky. 173; Ennis v. Gray, 87 Hun l. c. 357; Higgins v. Dewey, 107 Mass. 494.] See, also 21 Am. and Eng. Ency. of Law (2 Ed.), 487, et seq.

The defendant relies upon Fuchs v. St. Louis, 167 Mo. 620; Chandler v. Gas Co., 174 Mo. 321, and Paden v. Van Blarcom, 181 Mo. 117. Those cases, however, are easily distinguishable from the cases cited, and from the case at bar, in this, that in none of them was any act of negligence on the part of the defendant shown, or else the jury was required to find that the defendant had been negligent. Those cases are of such recent date that a close analysis thereof is not necessary to further demonstrate their inapplicability to the case at bar.

In the Fuchs case there was absolutely no evidence of negligence on the part of the city. In the Chandler case the same was true, but the negligent act which caused the injury was solely attributable to a third person, and the defendant had no knowledge of it, and such an act had never before been experienced by it in the conduct of its business. A similar independent, intervening cause had been experienced by this defendant prior to this occasion. The Paden case passed off entirely upon the theory that the court could not say as a matter of law whether or not the defendant was

guilty of negligence under the circumstances, but that it was a question for the jury under the facts in judgment there. And the court in that case distinctly held that the decision in the Fuchs case was not in conflict with anything said in that case.

### III.

The next contention of the defendant is that the court erred in giving erroneous instructions for the plaintiff.

The only instruction given for the plaintiff, which is set out in the abstract of the record, is as follows:

"If the jury believe from the evidence that on the evening of the 24th day of April, 1902, the defendant caused to be transmitted over an electric arc light circuit owned and operated by it, a current of electricity of such character that it was liable to be dangerous to human life, if diverted in whole or in part from the wire of such circuit; and if you further believe that the wire of such circuit at the time such current was so transmitted (if it was so transmitted) was in such condition that such circuit was liable to be. diverted in whole or in part from the wire of such circuit; and if you further believe that such current was so liable to be diverted (if so liable) because the wire of such circuit was electrically connected with the ground at that time at two or more places so as to divert a sufficient volume of electricity to kill a man; and if you further believe from the evidence that at the time the foregoing conditions existed (if·they did exist) the defendant knew, or by the exercise of reasonable care and prudence could or should have known, that such condition existed, or that there was a probability of their existence; and if your further believe that it was a want of reasonable care and prudence on the part of the defendant to so transmit such current of electricity under the circumstances aforesaid as claimed by the plaintiff to have existed (and you find that each and every one of such

circumstances did exist); and if you further find that by reason of such a diversion of the whole or a part of such a current under such circumstances (if so diverted under such circumstances) the whole or a part of such diverted current passed through and into the body of Francis M. Harrison and killed him, without contributory negligence on his part, and that the diversion of such a current so transmitted was the proximate cause of the death of Francis M. Harrison, and that such death was due to the want of such ordinary care and prudence on the part of the defendant, or its employees, under all the circumstances found by you to exist; and you further believe that the plaintiff on said day was the wife of said Harrison and suffered pecuniary loss from his death, your verdict should be for the plaintiff.''

It is objected that this instruction is erroneous because it made the defendant responsible if the jury found that some body was liable to divert the current, or if there was a probability that it would be diverted; or if the current was transmitted under the circumstances claimed by the plaintiff, and thus referred the jury to the indefinite proposition as to what the plaintiff might claim; that it submitted to the jury the question of what was the proximate cause of the death, and that it assumed as a fact that two ''grounds'' existed.

This criticism is not well taken. It was conceded by both parties that the current of electricity was not only liable to be dangerous to human life, but was certainly dangerous to human life if two ''grounds'' existed, and both sides admit that unless two ''grounds'' had existed, no injury would have resulted in this case, and as an injury did result, under the concession on both sides, it follows that two ''grounds'' must have existed. The instruction in speaking of the liability of the current being diverted, or of the probability of its being diverted, had reference entirely to the condition of the wire with respect to the abrasure of the insula-

tion which was shown to have existed for at least a month before the date of the accident, and simply required the jury to find whether or not the defendant had exercised reasonable care and prudence in ascertaining and remedying such condition if it existed, and was, therefore, unobjectionable in that respect.

The objection that it left the jury to hold the defendant liable if they found that the current was transmitted under the circumstances claimed by the plaintiff, and thus referred to the jury the indefinite proposition as to what the plaintiff might claim, arises entirely from overlooking the fact that the instruction used the word "aforesaid" and required the jury to find that the current was transmitted "under the circumstances aforesaid as claimed by the plaintiff to have existed (and you find that each and every one of such circumstances did exist)." Thus the instruction referred to the prior predicates therein and did not give the jury such a roving commission as counsel refer to.

The last objection to the instruction is that it left the jury to determine the proximate cause of the death.

The instruction specifies all the facts which the jury were required to find in order to make the defendant liable and then told them that if they found "that the diversion of such current so transmitted was the proximate cause of the death of Francis M. Harrison, and that such death was due to the want of ordinary care and prudence on the part of the defendant, or its employees, under all the circumstances found by you to exist," etc. Used in this connection, after having first defined to the jury all the facts that it was necessary for them to find, in order to make the defendant liable, the use of the term "proximate cause" certainly could not have misled the jury under the facts in judgment here. The facts are practically undisputed. Under those facts the defendant is liable. The verdict of the jury, therefore, simply announces a conclusion, as to the facts concerning which there is no dispute, and under

which the law imposes a liability on the defendant. The instruction, therefore, could not have misled the jury to the defendant's prejudice, and could have had no effect upon the merits of the case, and, therefore, the use of the words "proximate cause" in that instruction does not constitute reversible error.

But on the contrary the use of the term "proximate cause" in an instruction has been expressly sanctioned by this court. [Anderson v. Railroad, 161 Mo. l. c. 428.]

## IV.

The last contention of the defendant is that the court erred in admitting incompetent évidence offered by the plaintiff.

The testimony here claimed to have been incompetent is the testimony of witness Newkirk, a consulting electrical and mechanical engineer, to the effect that there are well-known methods of preventing accidents like that here involved, which provide the line of wires with "loops," so that when trouble or a "grounding" is found to exist on any part of the system, that portion of the system where the trouble exists may be disconnected from the balance of the system and thereby enable the lighting company to turn on the current of electricity and furnish lights to all parts of the system except that where the difficulty or trouble exists. This witness further testified that the "mangneto" employed by defendant was not the most effective or delicate instrument for detecting trouble or "grounds" on its lines, and that it would not enable the servants of the defendant to ascertain the location of the trouble when applying the test at the main office, and that there was an instrument called a "galvanometer," which is a much more delicate instrument than the "magneto" and by which not only the question of whether there is a "ground" but also how many "grounds" exist, and the location of each, can be ascertained at the main

Harrison v. Kansas City El. Light Co.

office. At first the court, over the objection of the de-
fendant, permitted the testimony as to the galvanome-
ter to go in, but afterwards, on the defendant's object-
ion, the court excluded that testimony and instructed
the jury not to consider it in making up their verdict.
As to the action of the trial court in first admitting and
afterwards excluding the testimony as to the galvano-
meter, it was clearly not error. To hold otherwise would
be to establish the rule of practice that when a court
made a mistake and admitted incompetent testimony,
and afterwards discovered that it had done so, it could
not effectually correct the error by instructions to the
jury, but that in order to remove the sting of the error
it would have to discharge the jury and award a new
trial before a new venire. Such a rule could not reason-
ably be expected to be announced by any court. When
a trial court becomes satisfied that it has erred in the
admission of testimony, all that it can do is to instruct
the jury to disregard it, and the presumption is that the
jury did disregard it. It is not easy to perceive what
injury the testimony of the witness as to the loops,
aforesaid, did the defendant in this case. The testi-
mony shows that the test disclosed the fact that there
was trouble on circuit No. 32; that defendant sent out
a lineman to locate it and correct it; that the lineman
instead of doing so made a wholly insufficient test, and
then, without fully investigating, concluded that the
trouble was on the trunk line and not on circuit No. 32.
If the defendant, therefore, had had a system of such
loops, the lineman would not have disconnected circuit
No. 32 from the trunk line for the reason that he had
concluded that the trouble did not exist on circuit No.
32. If the trouble existed on the trunk line, as the line-
man concluded was the fact, it would not have been nec-
essary to disconnect circuit No. 32, but would have been
necessary to turn off the current of electricity on the
trunk line. As hereinbefore pointed out, the negligence
of the defendant in this case consists in its failure to

ascertain, by means within its reach and at hand, whether the line was ''clear'' before it turned the current of electricity at 7:25 p. m., onto the trunk line, from which it was distributed to the various lamp loop lines, including No. 32.

Under the circumstances in this case, therefore, the question of whether it had or had not such loops, as were described by the expert witness, could have no possible bearing upon the defendant's liability, or upon the merits of this case. The law does not require the defendant, or anyone else, to adopt any particular appliances. All that the law requires is that the appliances adopted by the defendant shall be reasonably safe. If they are not, the defendant is liable. Not because it did not adopt better appliances, but because those it did adopt and use were not reasonably safe for the purposes for which they were used. The evidence of this witness as to the loops, should not, therefore, have been admitted, but it is impossible that it could have had any effect whatever upon the verdict of the jury in this case, nor could it, in any manner, have affected the negligence of the defendant in turning on the current of electricity at 7:25 p. m. without using the tests it had to find out whether the line was ''clear'' or not. That was the negligence of the defendant which produced, and would produce, the injury complained of, and which the defendant might have averted by employing the means it had.

It is true that the negligence of the defendant, standing alone, would not have caused the injury without the act of the boy in making the connection with the defendant's wire. It is also true that the act of the boy in making that connection could not have caused the injury complained of without the negligence of the defendant in turning on the current of electricity without first ascertaining that the line was ''clear.'' Thus, it required the concurrent negligence of the defendant and of the boy to produce the injury, and as above

shown, the defendant is liable, although its concurrent act was not the sole cause of the injury. And it makes no difference in this case that the boy was the son of the deceased. The legal consequence is the same as if it had been done by an entire stranger to the deceased.

For these reasons the judgment of the circuit court is affirmed. All concur.