JOE BALLARD, RESPONDENT, v. KANSAS CITY POWER & LIGHT COMPANY, APPELLANT.[*]

Kansas City Court of Appeals. June 6, 1927.

*Corpus Juris-Cyc References: Master and Servant, 39CJ, section 442, p. 314, n. 22; section 1313, p. 1117, n. 69; section 1325, p. 1132, n. 35; section 1343, p. 1155, n. 14.

*Johnson, Lucas & Graves, William C. Lucas* and *Ludwick Graves* for appellant.

*Clif Langsdale* for respondent.

ARNOLD, J.—This is an action in damages for personal injury. Defendant is a corporation engaged in the business of manufacturing and distributing electrical current in Kansas City, Missouri, and in furtherance of such business and in connection therewith, owns and maintains underground wires, cables, conduits and other apparatus. Plaintiff was employed by defendant as a cable splicer.

October 22, 1922, the date of the alleged injury, plaintiff was engaged in splicing cables in a chamber eighty-four inches below the surface of the pavement at the intersection of Eleventh and Oak streets in the city of Kansas City, Mo. In said chamber were cables and other apparatus maintained by defendant, the said chamber being entered through a manhole thirty inches in diameter which, when no one is operating therein, was covered by a heavy iron top or lid flush with the surface of the pavement, to avoid interference with travel thereover. On the occasion in question said lid was removed and plaintiff and a fellow workman were at the bottom of said chamber, engaged in joining cables. In this work, they used a heated substance technically known as "Ozite," a compound which

resembles tar and which when heated to a high temperature becomes thin and liquid. On the surface of the street at the time was a man, also in the employ of defendant, who was known as a cable splicer's helper. Eleventh street runs east and west and Oak street north and south, the two streets intersecting at right angles. Oak street at the point of the alleged injury is thirty-four feet wide and Eleventh street is thirty-five feet wide from curb to curb. The manhole, or surface opening to the chamber involved herein, was in the intersection of the two streets mentioned, and was about nine feet west of the east curb line of Oak street extended, and about four and one-half feet north of the south curb line of Eleventh street extended.

As a part of the equipment used by defendant in the operation in which plaintiff was engaged is a small cart on, or in, which the necessary tools and supplies are kept for use. On the occasion in question such a cart was caused by defendant to be brought to the location. This cart is described as having a body three feet, two and one-eighth inches in width by three feet, eight inches in length, with projecting handles two feet, four inches in length, thus making the cart over all six feet in length and three feet, two and one-eighth inches in width. The height of the body was about fifty-two inches and the cart handles twenty-one and one-half inches above the surface of the street.

The cart was placed about four and one-half feet south of the south edge of the manhole and parallel with Eleventh street, with the handles extending toward the west. The rear, or east end of the cart was six and one-half feet from the east curb of Oak street and twenty-one feet, six inches east of the west curb of Oak street. It appears there was placed around the manhole a rectangular guard consisting of four upright posts and two sets of cross-bars of three-fourths inch iron pipe, one twelve inches above the street surface and the other thirty-three inches above the surface, the guard setting square with the compass. Extending upward from the post at the northwest corner of the guard was a red flag used as a warning signal, five feet, three inches above the street level. For the purpose of heating the Ozite compound, defendant used a small kerosene furnace on the top of which was placed an ordinary kitchen kettle containing the compound. The furnace and the kettle, with the handle of the latter down, were twenty-one inches from the street surface, and with the handle up the kettle was higher than the under surface of the cart handles, so that in the event the cart handles were moved north, the handle of the kettle would thereby be struck. The furnace with the kettle thereon was placed southwest of the manhole and within radiating range of the cart handles, so that, if the cart handles were moved north the north one would strike the handle of the kettle.

On the day of the injury, while plaintiff was in the manhole chamber and the cart and kettle on the street surface, a man named Bond driving a Ford car north on Oak street attempting to pass the cart handles through the twenty-one and one-half foot space on the west, when the driver of another Ford car, passing Bond on the left and from the rear, collided with the left rear wheel of Bond's car and pushed it to the east, causing Bond's car to strike the handles of the cart and knock them to the northeast and they, in turn, knocked the kettle from the furnace causing it to roll a distance of about eighteen inches to two feet, spilling the heated contents thereof on the pavement, into the manhole and onto plaintiff, severely burning and injuring him.

There was testimony in defendant's behalf to the effect that the surface of the street at the point of the accident sloped slightly to the south, while plaintiff's testimony is that the surface was practically level. The fact that the accident happened is undisputed and the character of the street surface is of no great moment excepting insofar as it may apply to the question of defendant's negligence in putting the furnace and kettle where they were placed. The petition alleges and the proof shows that the intersection in question was in the business portion of the city, over which a great deal of vehicle travel passed.

The petition charges negligence in that defendant failed to furnish plaintiff a safe place in which to work, in this: That the location of the cart, furnace and kettle was such that a vehicle might strike them and cause the liquid compound to fall upon plaintiff; that such situation was wanting in ordinary care on the part of defendant; (2) failure to use ordinary care to guard the kettle and hot compound from being upset by a passing vehicle; (3) that the location of the kettle, furnace and cart was too close to the opening of the manhole; and this was wanting in ordinary care; (4) that defendant negligently ordered and directed plaintiff to go into the manhole under the conditions then existing; and that such order was wanting in ordinary care. The petition alleges that as a result of the negligence charged plaintiff was badly burned and gives in detail the results thereof. But as defendant does not attack the amount of the verdict, the details of the injuries as pleaded need not be here set out. The answer is a general denial.

The cause was tried to a jury resulting in a verdict and judgment for plaintiff in the sum of $7000. Motions for a new trial and in arrest of judgment were ineffectual and defendant has appealed. No material dispute has arisen between the parties as to the facts, the controversy being based upon the application of the law to the facts.

Under its assignments of error defendant charges the trial court erred in refusing to sustain defendant's objection to the introduction of any evidence at the beginning of the trial and in refusing to sustain a demurrer at the conclusion of plaintiff's evidence; in refusing to give a peremptory instruction in the nature of a demurrer at the close of all the evidence; that, under the pleadings and the evidence plaintiff is not entitled to recover because, under the allegations of the petition and the evidence submitted, there was no act of negligence pleaded or proved; that the accident to plaintiff was not such as could reasonably have been anticipated by defendant; that the proximate cause of the injury was not from any negligent act, or negligent failure to act on the part of the defendant; but that the proximate cause of the injury was the negligent act, or acts, of some third person or persons.

The first clause of the above assignment of error would seem to be an attack upon the sufficiency of the petition to state a cause of action; but as defendant fails to follow up this charge in its brief, we must conclude that such was not the purpose of the assignment, and that the last clause reflects defendant's position, to-wit, that under the allegations of the petition there was no act of negligence pleaded or proved; and the accident to plaintiff was such as could not reasonably have been anticipated by defendant. The solution of this question will determine all of defendant's charges of error.

Defendant bases its principal contention upon the assertion that the cause of injury was not any negligent act or negligent failure to act on the part of defendant, but that plaintiff's injury was proximately caused by the negligent act or acts of some third person, or persons. In this connection it is argued that the cart, kettle and furnace could not have been located in a safer place, being upon a down grade from the manhole a distance of six feet, three inches from the center thereof, so that it could not reasonably have been anticipated that the compound would flow up hill and at an angle into the manhole. The weakness of this position is in the undisputed fact that it did occur.

Defendant insists that the location of the furnace and kettle was the most practical and safest place. However, plaintiff points out that the furnace and kettle could have been safely placed on the east side of the cart, between the cart and the curb on the east side of Oak street where owing to the limited space it was impossible for traffic to pass. And so, we cannot say, as a matter of law that the implements were in the safest place, under the circumstances, and hold that question was for the wise determination of the jury.

Defendant argues that even though it may have been negligent in locating the compound pot and furnace where it did, such negligence was not the proximate cause of the injury, and declares the

negligence of the driver of the car which struck Bond's car was the proximate cause of upsetting the kettle with the resultant injury. In its brief defendant admits there was a bare possibility that an accident might happen, as shown by the facts, but that such possibility was remote; that a bare possibility is not the gauge by which liability may be determined in this case. And so it is urged that the proximate cause of the injury was the negligence of the driver of the car which struck Bond's car, and was too remote to fix liability on defendant for any negligence on its part in placing the furnace and kettle where it did.

Even in the face of the excellent brief submitted by defendant, we are not impressed with this contention. We think our opinion in McElroy v. Construction Co., 247 S. W. 209, 211, is quite enlightened and decisive on this point, wherein it is said:

"It was not necessary to show that defendant could have foreseen everything that intervened to cause the angle iron to fall in the way it did. All that was necessary to show was that defendant could have reasonably anticipated that something might have occurred causing material to fall through the open panel in such a way that it would likely strike its workmen beneath." [See, also, Leine v. Contracting Co. (Mo. App.), 114 S. W. 1147; Haney v. Mining & Smelting Co. (Mo. App.), 205 S. W. 93.] In the latter case it is said, l. c. 95:

"Defendant assigns error on plaintiff's first instruction, in that it requires the jury to find that in raising these loaded tubs they 'were likely to bump and throw rock from same down the shaft.' It is urged that there is no evidence to support such finding. It is true that all the witnesses say that when the tubs are properly started up the center of the shaft, and raised with due care by the hoisterman, and nothing goes wrong, then they will pass up and through the pigeon holes without bumping. Of course, the rocks do not so fall usually, or even frequently, for, if they did, no one would, or at least should, work at the bottom of the shaft. But things do not always go right and the unusual happens. There was a known danger of rocks being thus thrown down the shaft, and it was defendant's duty to use all reasonable means to guard against every known danger. A known danger may exist, though the actual occurrences may be at long intervals, or even never."

It must be admitted in the case at bar that if every automobile driver had been capable of passing through the space between the cart handles and the west curb without bumping another car, such an accident as here complained of could not have happened; but the possibility or probability of such a happening called for the exercise of ordinary care on the part of defendant in view of the heavy traffic

1122

at this point. In the case of Buckner v. Horse & Mule Co., 120 S. W. 766, 769, the Supreme Court uses the following language:

"It is not essential that defendant could have anticipated the very injury complained of, or that it could have anticipated that it would have occurred in the exact manner in which it did occur, but it is sufficient if the negligence of the defendant was the proximate cause of the injury. [Dean v. Railroad, 199 Mo. 411, 97 S. W. 910; Harrison v. Light Co., 195 Mo. 629, 93 S. W. 951, 7 L. R. A. (N. S.) 293; Hoepper v. Southern Hotel Co., 142 Mo. 378, 44 S. W. 257.] In the Dean case, supra, we quoted with approval the following from the case of Fishburn v. Railroad, 127 Iowa, 483, 103 N. W. 481: 'The liability of a person charged with negligence does not depend upon the question whether by the exercise of reasonable prudence he could or ought to have foreseen the very injury complained of; but he may be held liable for anything which after the injury is complete appears to have been a natural and probable consequence of his act or omission.' This as succinctly states the rule as we can state it."

It has been held and is the rule that where a defendant's negligence but for which the accident would not have happened, combined with some other cause or causes, has occasioned an injury, the defendant is liable, unless such other cause or causes were under the control of the plaintiff in the action, or were the outgrowth of his own conduct. [Harrison v. Electric Light Co., 195 Mo. 606, 625, 93 S. W. 951.] There might be cited many other cases in this State illustrating the rule in reference to concurrent negligence constituting proximate cause, but the cases cited are sufficient. From these the rule is obvious that if the defendant's negligence combines with that of another, or with any other independent intervening cause, he is liable, although his negligence was not the sole negligence or the sole proximate cause, and although his negligence without such other independent intervening cause would not have produced the injury. [Buckner v. Horse & Mule Co., supra.]

In Wright v. Rys. Co., 195 Mo. App. 480, 193 S. W. 963, 965, this court fully discussed this question and arrived at the following conclusion:

"Defendant's negligence in providing an improper place for the temporary storage of luggage was the proximate cause of the jury. The fact that someone might have negligently pushed or thrown the suit case off of the ledge would not excuse the defendant. As has been said by our Supreme Court: 'A defendant may be liable even if the accident was not caused by his sole negligence. He is liable if his negligence concurred with that of another, or with the act of God or with an inanimate cause, and became a part of the direct or proximate cause although not the sole cause.' 'If the con-

current or successive negligence of two persons, combined together, result in an injury to a third person, he may recover damages of either or both, and neither can interpose the defense that the prior or concurrent negligence of the other contributed to the injury. Thus, A. leaves his horse and cart standing in the street, without any person to watch them, and a passer-by strikes the horse, in consequence of which damage ensues, A. is answerable for such damage.' [Newcomb v. Railroad, 169 Mo. 422, 69 S. W. 352.]'' [See, also, Mummaw v. Telephone Co. (Mo. App.), 208 S. W. 476, to the same effect.] It was held in Carr v. Auto Supply Co., 239 S. W. 827, l. c. 829:

''Concurrent, as distinguished from joint, negligence arises where the injury is proximately caused by the concurrent wrongful acts or omissions of two or more persons acting independently. That the negligence of another person than the defendant contributes, concurs, or cooperates to produce the injury is of no consequence. Both are ordinarily liable. And unless the damage caused by each is clearly separable, permitting the distinct assignment of responsibility to each, each is liable for the entire damage. The degree of culpability is immaterial.''

Applying the rules above enunciated to the undisputed facts in the record before us, we conclude there was no error in the action of the trial court in overruling the demurrers. We find nothing in defendant's citations contrary to this ruling. The judgment is affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.